In the

# United States Court of Appeals
## For the Seventh Circuit

No. 14-2944

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

LAVELLE WATTS,

*Defendant-Appellant.*

Appeal from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 13 CR 158-1 — **John J. Tharp, Jr.,** *Judge.*

ARGUED JUNE 1, 2015 — DECIDED AUGUST 20, 2015

Before WOOD, *Chief Judge*, and POSNER and WILLIAMS,
*Circuit Judges*.

POSNER, *Circuit Judge*. The defendant, Watts, was convicted by a jury of assault with a dangerous weapon with intent to do bodily harm, in violation of 18 U.S.C. § 113(a)(3). He was sentenced to five years in prison (half the statutory maximum for his offense). He challenges the conviction and sentence on a variety of grounds, some too slight to require extended, or even any, discussion.

The assault (and there undoubtedly *was* an assault) occurred in a courtroom in the Chicago federal courthouse at the end of the trial of a civil rights suit brought by Watts against a police officer whom Watts accused of having broken his arm in the course of arresting him. When the judge announced the verdict, which was in favor of the officer, Watts stood up, picked up the 44 lb. chair that he'd been sitting on, and swinging it in a 180 degree arc to gain momentum hurled it at the officer, who was sitting only two or three feet away. The chair struck the officer on his head, face, left arm, left shoulder, and back, injuring him, though he was not rendered unconscious and apart from numbness in one of his fingers his injuries appear to have healed. Pandemonium broke out in the courtroom, all recorded on video. Several jurors fled. Watts shouted "Now we're even," and later told two Deputy U.S. Marshals, "I chucked a chair at him. I cracked his ass. I socked his ass. I told him now we're even."

We need to set forth the entire text of 18 U.S.C. § 113(a) in order to explain our resolution of the principal issue raised by the defendant, which concerns the jury instructions. We italicize the two subsections on which the jury was instructed:

> (a) Whoever, within the special maritime and territorial jurisdiction of the United States, is guilty of an assault shall be punished as follows:
>
>> (1) Assault with intent to commit murder or a violation of section 2241 or 2242, by a fine under this title, imprisonment for not more than 20 years, or both.

(2) Assault with intent to commit any felony, except murder or a violation of section 2241 or 2242, by a fine under this title or imprisonment for not more than ten years, or both.

(3) *Assault with a dangerous weapon, with intent to do bodily harm, by a fine under this title or imprisonment for not more than ten years, or both.*

(4) Assault by striking, beating, or wounding, by a fine under this title or imprisonment for not more than 1 year, or both.

(5) *Simple assault, by a fine under this title or imprisonment for not more than six months, or both, or if the victim of the assault is an individual who has not attained the age of 16 years, by a fine under this title or imprisonment for not more than 1 year, or both.*

(6) Assault resulting in serious bodily injury, by a fine under this title or imprisonment for not more than ten years, or both.

(7) Assault resulting in substantial bodily injury to a spouse or intimate partner, a dating partner, or an individual who has not attained the age of 16 years, by a fine under this title or imprisonment for not more than 5 years, or both.

(8) Assault of a spouse, intimate partner, or dating partner by strangling, suffocating, or attempting to strangle or suffocate, by a fine under this title, imprisonment for not more than 10 years, or both.

This is a badly drafted statute. Neither "assault" nor "simple assault" is defined, nor "dangerous weapon." (Nor do we find the terms defined elsewhere in Title 18.) The common law, both civil and criminal, distinguishes between "assault" and "battery." Assault is an intentional threatening

gesture (such as pointing a gun at a person or trying but failing to strike him with one's fist) that does not, however, result in physical contact with the victim.* Battery is an intentional, unconsented-to, injurious or otherwise offensive physical contact with the victim (a completed assault, so to speak): "Although the word 'assault' is sometimes used loosely to include a battery, and the whole expression 'assault and battery' to mean battery, it is more accurate to distinguish between the two separate crimes, assault and battery, on the basis of the existence or non-existence of physical injury or offensive touching." Wayne R. LaFave, 2 *Substantive Criminal Law* § 16.1 (2d ed., Westlaw database updated Sept. 2014) (footnotes omitted).

The breadth of the term "offensive touching" needs to be noted, though this is not an offensive-touching case. "The least touching of another's person wilfully, or in anger, is a battery; for the law cannot draw the line between different degrees of violence, and therefore totally prohibits the first and lowest stage of it: every man's person being sacred, and no other having a right to meddle with it, in any the slightest

---

* In the first reported common law case of assault, "W. came in the night to the house of the said I., and would have bought some wine, but the door of the tavern was closed; and he struck on the door with a hatchet, which he had in his hand, and the woman plaintiff put her head out at a window and ordered him to stop; and he perceived her and struck with the hatchet, but did not touch the woman." The judge ruled: "There is harm, and a trespass for which they shall recover damages, since he made an assault upon the woman, as it is found, although he did no other harm." *I. de S. and Wife v. W. de S.*, Y.B. Liber Assisarum, 22 Edw. 3, f. 99, pl. 60 (1348 or 1349). But in *Tuberville v. Savage*, 1 Mod. Rep. 3, 86 Eng Rep. 684 (1699), the court held that it was not an assault to place one's hand on one's sword and say, "If it were not assize-time, I would not take such language from you," because the words negated the threat implied by his grabbing his sword.

manner." *United States v. Stewart*, 568 F.2d 501, 505 (6th Cir. 1978) (quoting 3 W. Blackstone, *Commentaries on the Laws of England* 120 (E. Christian ed. 1822)). "Groping" a woman or child—sexually offensive but not violent physical contact—is a common example. See, e.g., *United States v. Bayes*, 210 F.3d 64, 69 (1st Cir. 2000); *United States v. Williams*, 197 F.3d 1091, 1096–97 (11th Cir. 1999).

Oddly, the government has tried in this case to narrow the range of crimes covered by the statute by arguing that a merely offensive touching is not simple assault. It cites cases such as *United States v. Vallery*, 437 F.3d 626, 631–32 (7th Cir. 2006), that say that assault requires an intent to injure. But the judges in those cases, unlike *Bayes* and *Williams*, were not faced with having to decide whether an intent to inflict a merely offensive rather than injurious physical contact suffices to make the assailant guilty of simple assault. In 18 U.S.C. § 113(a), "assault" primarily means common law "battery," although it could include a common law "assault"—for example had Watts flung the chair at the officer intending to hit him but missed, so that there was no physical contact. Subsections (1) through (3), (5), and (8) of the statute punish common law assault and common law battery, while subsections (4), (6), (7), and (in part) (8) punish common law battery.

It would help if the statute defined "assault," "assault with a dangerous weapon, with intent to do bodily harm," and "simple assault." Relying on the 2012 Seventh Circuit Pattern Criminal Jury Instruction defining assault (though with reference to bank robbery and related crimes defined in 18 U.S.C. § 2113 rather than § 113(a)), the judge instructed the jury that "assault" means "to intentionally attempt or

threaten to inflict bodily injury upon another person with the apparent and present ability to cause such injury that creates in the victim a reasonable fear or apprehension of bodily harm. An assault may be committed without actually touching, striking, or injuring the other person." The instruction is not as clear as it could be, because it does not say that actually touching, etc. is also an assault, though the second sentence implies that an assault may involve an actual touching, striking, or injuring of the victim, because if an assault *may* be committed without touching the intended victim, then equally it may be committed with a touching resulting.

As for the meaning of "assault with a dangerous weapon, with intent to do bodily harm" (subsection (a)(3) of the statute, the first of the two subsections under which Watts was charged), the judge told the jury that it means "first, that the defendant assaulted the victim; second, that the defendant acted with the intent to do bodily harm to the victim; third, that the defendant used a dangerous weapon; and fourth, that the assault took place on federal property."

The judge didn't bother to define "simple assault" (subsection (a)(5) of the statute, the other subsection under which Watts was charged) for the jury, but said only that to find simple assault it would have to find "that the defendant assaulted the victim" and "that the assault took place on federal property."

Although the instructions, like the statute on which they are based, leave something to be desired in the way of clarity, at least the jury was told that to convict of the more serious of the two offenses charged it had to find that the assault had been committed with a dangerous weapon and been in-

tended to do bodily harm—and the evidence that Watts had intended to do bodily harm to his victim with a dangerous instrumentality—namely a heavy chair flung from a yard away or less—was compelling. Of course a chair is not a "weapon" in the most common sense of the word, but it can be and in this case was used as a weapon. It would be better if the statute stated that "dangerous weapon" includes objects used, though not designed to be used, as weapons. But it is not a fatal infirmity. The judge told the jury that "a dangerous weapon or device means any object that has the potential or capability to endanger life or to inflict great bodily harm," and that was good enough. *Many* objects not intended as weapons nevertheless can be and frequently are used as weapons—sometimes lethal weapons (think of kitchen knives, two-by-fours, and piano wire). *United States v. Schoenborn*, 4 F.3d 1424, 1432–33 (7th Cir. 1993).

A criminal defendant is entitled to a lesser-included offense instruction when a reasonable jury could convict him of the lesser offense but acquit him of the greater. *United States v. McCullough*, 348 F.3d 620, 624 (7th Cir. 2003). Because Watts argued (preposterously) at trial that he didn't intend to injure the officer by throwing a chair at him, he requested and received a simple assault instruction. He complains that the instruction was erroneous because it defined assault as requiring an intent to threaten, or attempt, to do bodily harm, while an assault may also be committed by a person who intends to threaten or attempt to make offensive rather than injurious physical contact with the victim. True, but irrelevant. Assaults intended only to result in an offensive touching of the intended victim are such acts as spitting at him, knocking his hat off his head, or urinating on his face while he's unconscious. See, e.g., *United States v. Delis*, 558

F.3d 177, 181–83 (2d Cir. 2009); *United States v. Lewellyn*, 481 F.3d 695, 698–99 (9th Cir. 2007); *United States v. Whitefeather*, 275 F.3d 741, 742–43 (8th Cir. 2002). Whatever mere offensive touching is, it isn't flinging a heavy chair at your enemy sitting two or three feet away from you ("piece of shit" and "racist bitch" were among the epithets that the defendant hurled at his victim immediately before, during, or after the assault).

Unsurprisingly in this video age, the entire incident in the courtroom was captured on video, leaving no possible doubt that the defendant was guilty of an offense punished in section 113(a)(3), namely assault with a dangerous weapon with intent to inflict bodily harm. The jury was properly instructed that it must not even consider the lesser offense punished in (a)(5) (but not defined in it, defined— incorrectly—only in the judge's instructions) unless it decided to acquit the defendant of the greater offense. So having found the defendant guilty of (a)(3) it had no business considering (a)(5). The judge needn't have given a "simple assault" instruction at all, because no reasonable jury could have acquitted the defendant of assault with a dangerous weapon with intent to inflict bodily harm yet convicted him of simple assault. *United States v. McCullough*, *supra*, 348 F.3d at 624–28.

The simple-assault instruction was not only superfluous; it was mischievous. Were there jurors who sympathized with the defendant, maybe believing he'd been terribly victimized by the police officer whom he assaulted, or just hating police, they might nevertheless be reluctant to acquit given the weight of the evidence of guilt. They might try instead to negotiate a compromise with the other jurors—

acquit of the greater offense, convict of the lesser, though the evidence of the greater offense was overwhelming and of the lesser nonexistent.

Watts' lawyer did not invite jury nullification, but did try to sell the jury on the proposition that his client's attack on the police officer had merely been an "impulsive display," devoid of any intention of harming the officer. But intent can be formed in an instant; people can and do kill on impulse; and impulse is not inconsistent with premeditation. It's enough that Watts *aimed* the chair at the officer. By taking the "impulse" line, moreover, the lawyer opened the door to the officer's testifying about an earlier incident, in which he had been threatened in a jail by Watts, who had been meditating revenge against the officer for real or imagined wrongs for a long time, beginning with an arrest of Watts by the officer in 2009. Although the officer should not have mentioned in his testimony that the threat had been made in a jail, implying that Watts had a previous arrest and maybe conviction, the slip-up was harmless given the overwhelming evidence of Watts' guilt.

The officer also testified that Watts had committed an "aggravated battery" by throwing the chair at him. The statement might have confused the jury, as the term was not in the statute and was not included in the instructions, had not the officer explained that "aggravated battery" was simply the state law term for assaulting a police officer.

The defendant objects not only to his conviction but also to the severity of the sentence. Actually he was let off pretty lightly. The judge could well have given him the statutory maximum of ten years—which would have been under the applicable guidelines range of 130 to 162 months. The range

included an upward adjustment pursuant to U.S.S.G. § 3A1.2(b) because the offense was motivated by the victim's being a government employee, namely a police officer who had aroused the defendant's wrath by the exercise of police authority over him. See, e.g., *United States v. Williams*, 520 F.3d 414, 424–25 (5th Cir. 2008); *United States v. Talley*, 164 F.3d 989, 1003–04 (6th Cir. 1999). Watts challenges the "official victim" enhancement on the ground that he was engaged in a personal vendetta against the officer to which the latter's status as an "official victim" was irrelevant. But the enhancement is designed to protect government officers in the performance of their official duties. Watts assaulted a police officer in revenge for actions taken by the officer in his official role.

To cap a vendetta against a police officer by hurling a heavy chair at him from such a short distance that you can't miss hitting him, in a courtroom during a trial at the very moment when the jury's verdict acquitting the officer of violating Watts' civil rights is read—injuring the officer while screaming abuse and by his act and words causing jurors to scatter in fear—is a grave criminal act, especially against the background of the assailant's dense criminal history. That history consists of 23 convictions for traffic violations resulting from his repeatedly driving on a suspended license and without required insurance, along with convictions for battery, retail theft, residential burglary, possession of illegal drugs, and contempt of court.

A dangerous person, a dangerous example of a holder of grudges against the police, a person with no regard for the decorum of the courtroom or for the law itself, a scofflaw, a

violent person—his conviction and (in the circumstances, relatively light) punishment are

AFFIRMED.