In the

# United States Court of Appeals

## For the Seventh Circuit

No. 15-1604

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

CHARLES W. ARMOUR,

*Defendant-Appellant.*

Appeal from the United States District Court for the
Central District of Illinois.
No. 3:07-CR-30103 — **Sue E. Myerscough**, *Judge.*

ARGUED SEPTEMBER 22, 2015 — DECIDED OCTOBER 26, 2015

Before FLAUM, WILLIAMS, and HAMILTON, *Circuit Judges.*

FLAUM, *Circuit Judge.* In 2008, Charles Armour was sentenced to fifty-one months in prison and a three-year term of supervised release after he pled guilty to possession of a firearm by a felon. After he was released from prison in 2012, Armour violated the conditions of his supervised release in several incidents, including a conviction of aggravated battery for beating his eight-year-old son. Accordingly, his probation officer submitted to the district court a petition to re-

voke Armour's supervised release and a violation memo-
randum detailing Armour's most recent infractions. The dis-
trict court then sentenced Armour to twenty-four months in
prison followed by a one-year term of supervised release.
Armour now appeals, challenging his new sentence and the
conditions of his supervised release. We affirm.

## I. Background

When Armour pled guilty to possession of a firearm by a
felon in 2008, he had a criminal history category VI, six felo-
ny convictions, a total adjusted offense level of seventeen,
and an advisory guidelines range of fifty-one to sixty-three
months in prison. The district court sentenced Armour to fif-
ty-one months of imprisonment followed by three years of
supervised release. The conditions of Armour's supervised
release prohibited him from, among other things, commit-
ting another crime, leaving the district court's jurisdiction
without permission from his probation officer, and unlaw-
fully using a controlled substance.

Armour began his term of supervised release on October
23, 2012, and he began violating the conditions of his release
shortly thereafter. On January 31, 2013, Armour was arrested
for failure to comply with a lawful request in Missouri after
he ran from police officers who caught him trespassing in a
resident's yard at 3:27 AM, and he pled guilty to this offense
on April 4, 2013. Armour did not obtain authorization before
traveling to Missouri, and therefore, had left the jurisdiction
without authorization. Between June and September 2013,
Armour submitted four urine samples that tested positive
for marijuana. In April 2014, Armour beat his eight-year-old
son with a belt and belt buckle, resulting in a conviction of

two counts of aggravated battery and a sentence of seven years in prison.

In May 2014, U.S. Probation Officer Thomas Brown submitted to the district court a petition to revoke Armour's supervised release, pointing to Armour's beating of his son as the basis for revocation. The district court granted the petition and issued an arrest warrant for Armour. On August 20, 2014, Armour made an initial appearance before a magistrate judge, who released Armour on bond pending a revocation hearing. As a condition of his release on bond, Armour was ordered to reside with a third-party custodian and prohibited from having contact with any minor children. On October 29, 2014, Armour's probation officer petitioned to have Armour's bond revoked, alleging that he violated the conditions of his bond by having contact with his minor children. On November 3, 2014, the magistrate judge held a hearing and allowed Armour to modify the conditions of his release to permit him to stay with his sister-in-law, instead of with his previous third-party custodian. However, when U.S. Probation Officer Sarah Dykstra visited Armour at his sister-in-law's home on February 11, 2015, Armour said that his sister-in-law had moved to Iowa and was no longer living with Armour.

On February 23, 2015, Officer Brown filed a violation memorandum with the district court. In addition to the "Violation Conduct" section, which detailed the aggravated battery conviction that was the basis of the revocation petition, the violation memorandum contained a "Supervision History" section, which stated that Armour had been arrested in Missouri, had left the district court's jurisdiction without permission, and had submitted four urine specimens

that tested positive for marijuana. The violation memorandum also stated that Armour had failed to reside with a third-party custodian, thus violating a condition of his release on bond, and it recommended several supervised release conditions. Officer Brown attached to the violation memorandum the original presentence investigation report ("PSR"), which was prepared by U.S. Probation Officer Michelle Cyrus prior to Armour's 2008 sentencing for possession of a firearm by a felon.

On February 26, 2015, Armour filed a Commentary on Revocation conceding that he had violated a condition of supervised release and waiving his right to contest the allegations in the revocation petition. In this filing, Armour refers to the violation memorandum twice but does not object to the filing of or the facts contained in the violation memorandum. The Commentary on Revocation objects to the imposition of any further term of supervised release and "to any and all discretionary conditions," and it makes specific objections to several of the proposed conditions of supervised release.

At his revocation hearing on March 9, 2015, Armour reaffirmed his decision to waive a hearing on the revocation petition. The district court asked Armour if he "reviewed [the violation memorandum] and had a chance to talk to [his] attorney about it," and Armour responded, "[y]es, Your Honor." The district court asked about Armour's objections to the violation memorandum, and Armour's counsel responded that all of his objections "go to the conditions of supervised release." The government said it had no objection to the violation memorandum, and the district court adopted the factual findings of the violation memorandum as its own.

At this hearing, Armour requested a twelve-month sentence with no supervised release, but the district court agreed with the government's recommendation and sentenced Armour to twenty-four months in prison and a one-year term of supervised release. After the district court orally pronounced the conditions of Armour's supervised release, Armour objected to all of them. Armour now appeals, challenging his sentence and the following conditions of his supervised release:

- You shall not knowingly be present at places where controlled substances are illegally sold, used, distributed, or administered.
- You shall report to the probation officer in a manner and frequency as directed by the Court or Probation.
- You shall not possess a firearm, ammunition, destructive device or any other dangerous weapon.
- You shall notify Probation at least ten days prior to or as soon as you know about any changes in residence and any time you leave a job or accept a job.
- You shall not meet, communicate, or otherwise interact with any person whom you know to be a convicted felon, or to be engaged in or planning to engage in criminal activity unless you're granted permission to do so by the probation officer.
- You shall permit a probation officer to visit you at home or any other reasonable location between the hours of 6:00 AM and 11:00 PM, unless investigating a violation or in case of emergency.
- You shall notify Probation within 72 hours of being arrested or questioned by law enforcement.

- You shall not purchase, possess, use, distribute, or administer any controlled substance or psychoactive substance. You shall, at the direction of Probation, participate in a program for substance abuse treatment and abide by the rules of the treatment provider. You shall be subject to this condition until such time as Probation determines that drug abuse treatment and testing will no longer assist you to avoid committing further crimes.

## II. Discussion

### A. The Violation Memorandum

On appeal, Armour challenges the filing of the violation memorandum by Officer Brown and the district court's adoption of the facts contained within it. Armour focuses his argument on certain facts in the violation memorandum, including that he was arrested in Missouri, left the jurisdiction without authorization, tested positive for marijuana, and did not reside with a third-party custodian when he was released on bond. Armour argues that because these facts were not asserted in the revocation petition as bases to revoke supervised release and because the district court did not determine the reliability of the information in the violation memorandum, the district court erred in relying on these facts at sentencing.

However, Armour never raised these arguments before the district court even though he had the opportunity to do so, and thus they are waived. "Waiver occurs when a criminal defendant intentionally relinquishes a known right." *United States v. Brodie*, 507 F.3d 527, 530 (7th Cir. 2007) (citations and internal quotation marks omitted). "Waiver of a

right extinguishes any error and precludes appellate review ….” *Id.*

We recognize that “a lawyer’s statement at sentencing that the defendant does not object to anything in the presentence report does not inevitably constitute a waiver ….” *United States v. Jaimes-Jaimes*, 406 F.3d 845, 848 (7th Cir. 2005). However, “[t]he touchstone of waiver is a knowing and intentional decision.” *Id.* Therefore, when a criminal defendant selects among arguments as a matter of strategy, he waives the arguments he decides not to present. *Id.*

The facts of this case resemble those in *Brodie*, which held that the defendant, Brodie, waived his right to object to his sentence because Brodie had access to the presentence report and knew of his right to object. 507 F.3d at 531. After his conviction, Brodie objected to certain parts of the PSR, but then stated at his sentencing hearing that he had no further objections. *Id.* This Court found that this was “the paragon of intentional relinquishment,” especially since Brodie had strategic reasons not to raise his near-frivolous arguments to the sentencing judge, as they could have distracted the court from the stronger arguments he did raise. *Id.* at 531–32.

Here, Armour stated at the revocation hearing that he reviewed the violation memorandum and had a chance to talk to his attorney about it. His counsel stated that all of Armour’s objections to the violation memorandum were about the conditions of supervised release. The only other objection Armour made to the violation memorandum was to the cover page stating that he was arrested on August 19, 2014, when he was actually arrested on June 22, 2014. Thus, we are persuaded that Armour’s decision not to challenge the readily-proven facts in the violation memorandum was intention-

al and supported by a tactical rationale, as these weak arguments could have distracted the court from Armour's stronger arguments objecting to the conditions of his supervised release. Therefore, Armour waived this challenge.[1]

---

[1] Even assuming, arguendo, that Armour merely forfeited this challenge, his argument fails under plain error review. First, Armour argues that Federal Rule of Criminal Procedure 32 allows presentence reports but that no legal authority permits violation memoranda. We disagree. PSRs are created by probation officers to inform the court about a defendant's criminal history and factors relevant to sentencing. *See* Fed. R. Crim. P. 32(d). The violation memorandum here serves the same purpose. It includes the original PSR from Armour's 2008 conviction and provides updated information about his recent violations of his release conditions. Additionally, 18 U.S.C. § 3603(2) requires a probation officer to keep a sentencing court informed as to the conduct of a person on supervised release, thus providing a legal basis for the filing of a violation memorandum. Finally, our case law acknowledges the use of violation memoranda. *See, e.g., United States v. Smith*, 770 F.3d 653, 657–58 (7th Cir. 2014) (relying on facts alleged in a violation memorandum when ruling on defendant's alleged violation of supervised release); *United States v. Tovar-Pina*, 713 F.3d 1143, 1146 (7th Cir. 2013) (noting that the probation office prepared a violation memorandum, which neither party objected to, in addition to PSRs).

Next, Armour challenges the reliability of the violation memorandum, arguing that Officer Brown, the author of the document, had no first-hand knowledge of the conduct alleged in the memorandum. However, the facts alleged in the violation memorandum are reliable for other reasons: Armour's offense in Missouri was supported by his guilty plea; the fact that he left the jurisdiction without permission was proven by his arrest in Missouri; Armour's marijuana use was established by lab tests; and the fact that he did not reside with a third-party custodian was supported by Armour's statement to Officer Dykstra that his third-party custodian had relocated to Iowa. Further, Armour bears the burden of proving that the violation memorandum is inaccurate or unreliable. *See United States v. Rollins*, 544 F.3d 820, 838 (7th Cir. 2008). Armour does not offer any evidence calling into question the accuracy or reliability of the

### B. Sentencing Factors

We next turn to Armour's challenge to the factors the district court considered at his revocation hearing. The Seventh Circuit has not conclusively determined a specific standard for appellate review of the factors the district court considered when resentencing a defendant at a revocation hearing. *See United States v. Raney*, 797 F.3d 454, 465 (7th Cir. 2015) (noting that our review of a sentence imposed in a revocation proceeding is "highly deferential"); *United States v. Pitre*, 504 F.3d 657, 663–64 (7th Cir. 2007) (applying the plain error standard of review when defendant did not raise arguments before the district court challenging the court's lack of explanation for a sentence imposed at a revocation hearing); *see also United States v. Clay*, 752 F.3d 1106, 1108 (7th Cir. 2014) (leaving open whether the standard of review for the factors considered at a revocation hearing should be abuse of discretion or plain error). As in *Clay*, we do not need to resolve the disagreement over the standard of review because Armour's argument fails under both abuse of discretion and the more deferential plain error standard. *See* 752 F.3d at 1108.

Armour argues that the district court abused its discretion by relying primarily on a factor from the sentencing statute, 18 U.S.C. § 3553(a)(2)(A)—"the need for the sentence imposed … to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense"—that is not listed in the statute governing post-revocation sentencing, 18 U.S.C. § 3583(e). In *Clay*, we concluded that considering § 3553(a)(2)(A) in revoking super-

---

violation memorandum. Thus, the district court did not plainly err in adopting the facts in the violation memorandum.

vised release is not procedural error, thereby joining the majority of circuits that have addressed the question. 752 F.3d at 1107. As long as "the district court relies *primarily* on the factors listed in § 3583(e), including the nature and circumstances of the violations, the history and characteristics of the defendant, the need to protect the public, and the need for adequate deterrence," then § 3553(a)(2)(A) may also be considered. *Id.* at 1108 (emphasis added).

Although the district court referred to § 3553(a)(2)(A), the court relied primarily on factors listed in § 3553(a)(1), namely, "the nature and circumstances of the offense and the history and characteristics" of Armour. First, the court discussed how Armour has "had a lot of trouble obeying the law over the years" and noted that his latest violation—the beating of his eight-year-old son—was "exceptionally troubling." The court also discussed Armour's other violations of supervised release. Second, the court considered § 3553(a)(2)(C)—"the need for the sentence imposed … to protect the public from further crimes of the defendant"—when it stated:

> So you have numerous prior incarcerations and crimes. You show little improvement in your way of life. I only hope that this additional term of imprisonment will provide you with time to rethink your ways, help you with your drug addiction, and keep you from coming out and getting in further trouble with the law.

Although the district court also considered § 3553(a)(2)(A), stating, "I believe this sentence adequately reflects the seriousness of the offense, promotes respect for the law, provides just punishment, and hopefully affords ad-

equate deterrence," a review of this comment within the context of the full revocation transcript shows that this was a concluding remark and not the court's primary consideration. Additionally, as we noted in *Clay*, "there is significant overlap between [the factors listed in § 3583(e)] and § 3553(a)(2)(A): the nature of a violation includes its seriousness, and promoting respect for the law is a means of deterring future violations." 752 F.3d at 1108–09 (internal citations and quotation marks omitted). Thus, it was neither plain error nor an abuse of discretion for the district court to impose a sentence of twenty-four months in prison and a one-year term of supervised release based on its consideration of the above factors and Armour's repeated violations.

## C. Length and Conditions of Supervised Release

Finally, we turn to Armour's challenges to his one-year term of supervised release and to various conditions associated with it. We review the imposition of a condition of supervised release for an abuse of discretion if it is a contested condition (*i.e.*, defendant objected below), while we review uncontested conditions for plain error. *United States v. Kappes*, 782 F.3d 828, 844 (7th Cir. 2015). Armour clearly objected to all of the conditions of supervised release after they were imposed by the sentencing judge, so we review for an abuse of discretion.[2]

---

[2] We note that there is "some tension in our cases as to the proper standard of review when a defendant fails to object (or, more accurately, take exception) after the sentencing judge imposes a condition to which the defendant had no notice." *Id.* at 843–44 (internal quotation marks omitted). However, since Armour objected after the conditions were imposed, we do not need to resolve this issue at this time.

In *United States v. Ross*, this Court stated:

> Under 18 U.S.C. § 3583(d), a sentencing court
> has discretion to impose appropriate condi-
> tions of supervised release, to the extent that
> such conditions (1) are reasonably related to
> factors identified in § 3553(a), including the na-
> ture and circumstances of the offense and the
> history and characteristics of the defendant; (2)
> involve no greater deprivation of liberty than is
> reasonably necessary for the purposes set forth
> in § 3553(a); and (3) are consistent with the pol-
> icy statements issued by the Sentencing Com-
> mission. Policies emphasized by the Sentencing
> Commission include deterrence, rehabilitation,
> and protecting the public.

475 F.3d 871, 873 (7th Cir. 2007) (internal citation omitted).

### 1. *One-Year Term of Supervised Release*

Armour argues that his term of supervised release is im-
proper because the district court gave no justification for the
length of the supervised release. This Court reviews de novo
whether a judge adequately explained a chosen sentence.
*United States v. Baker*, 755 F.3d 515, 522 (7th Cir. 2014). Super-
vised release is part of the sentence imposed, so the district
court's justifications for imposing the twenty-four months in
prison also apply to the one-year term of supervised release.
*See United States v. Thompson*, 777 F.3d 368, 373 (7th Cir. 2015)
(noting that § 3583(c) confirms that conditions of supervised
release are part of the overall sentence). The factors set out in
§ 3583(c), which governs supervised release, are the same
§ 3553(a) factors that are set out in § 3583(e), which governs

revocations. We have already determined that the district court properly justified Armour's sentence after considering these factors, with particular emphasis on § 3553(a)(1)—"the nature and circumstances of the offense and the history and characteristics of the defendant"—and § 3553(a)(2)(C)—"the need for the sentence imposed … to protect the public from further crimes of the defendant." Thus, the district court provided an adequate justification for Armour's sentence, which included his term of supervised release.

### 2. *Prohibition on Knowingly Being Present at a Place Where Drugs are Illegally Sold*

Next, Armour argues that the condition that he "shall not knowingly be present at places where controlled substances are illegally sold, used, distributed, or administered" is vague and overbroad. He contends that the word "places" is expansive and problematic because marijuana use is legal in Illinois but illegal under federal law, creating "a conundrum." We find this unpersuasive. "A condition of supervised release is unconstitutionally vague if it would not afford a person of reasonable intelligence with sufficient notice as to the conduct prohibited." *United States v. Schave*, 186 F.3d 839, 843 (7th Cir. 1999). The word "place" has a generally understood meaning—a building or area—such that a person of reasonable intelligence would understand what is prohibited by this condition. *See, e.g.*, Merriam-Webster (Oct. 13, 2015), http://www.merriam-webster.com/dictionary/place (providing that one definition of "place" is "a building or area that is used for a particular purpose"). Thus, the district court did not abuse its discretion in ordering this condition.

### 3. *Reporting to the Probation Officer as Directed*

During his supervised release, Armour is also required to "report to the probation officer in a manner and frequency as directed by the Court or Probation." Armour argues that this poses a risk of inconsistent law enforcement since Armour could be required to do as little as call the probation officer semi-annually, or he could be subject to more rigorous requirements, such as appearing in person twice a day. We agree with the government's argument that Armour's speculative concern is not supported by any evidence. Additionally, this condition is justified by 18 U.S.C. § 3603(2)'s requirement that a probation officer remain informed of the conduct and condition of a person under supervision. This reporting condition will facilitate the probation officer's compliance with this statutory requirement. Further, the condition is consistent with the policy goal of rehabilitation, as it should allow the probation officer to help Armour "bring about improvements in his conduct and condition." § 3603(3). Therefore, the imposition of this condition was not an abuse of discretion.

### 4. *The "Dangerous Weapon" Prohibition*

The district court prohibited Armour from possessing a "firearm, ammunition, destructive device or any other dangerous weapon." Armour challenges this ban as unconstitutionally vague and overbroad. Since a person of reasonable intelligence would have sufficient notice as to the conduct prohibited—not possessing dangerous weapons—this condition is not unconstitutionally vague. *See Schave*, 186 F.3d at 843. *United States v. Watts* supports this conclusion. In *Watts*, we affirmed a conviction for assault with a dangerous weapon with intent to do bodily harm after the defendant

threw a forty-four pound chair at a corrections officer. 798 F.3d 650, 651, 655 (7th Cir. 2015). We noted that although "[i]t would be better if the statute stated that 'dangerous weapon' includes objects used, though not designed to be used, as weapons … it is not a fatal infirmity." *Id.* at 653. The same logic applies here. Thus, the district court did not abuse its discretion in ordering this condition.

5. *Reporting Changes in Residence or Employment*

The district court required Armour to "notify Probation at least ten days prior to or as soon as you know about any changes in residence and any time you leave a job or accept a job." Armour argues that the reporting requirement for any change in residence is vague and unnecessary, citing *Kappes*. However, Armour takes the *Kappes* holding out of context. In *Kappes*, this Court found that the condition that defendant notify his probation officer of any "change in … employment" was overly vague because it failed to indicate "whether change in employment just means changing employers or also includes changing from one position to another for the same employer at the same workplace." 782 F.3d at 849. This can be distinguished from the reporting condition here, which makes clear that it applies when Armour relocates to a new residence or leaves or accepts a job.

Armour also argues that given that he is unemployed, there should be no condition pertaining to his employment, relying on our decision in *United States v. Thompson*. In *Thompson*, we held that it was inappropriate to impose a condition that the childless, single "defendant shall support his or her dependents" because the condition "assumes arbitrarily and maybe inaccurately that should [defendant] ever acquire dependents he will have … the resources necessary

to support [them]." 777 F.3d at 376. However, Armour's case is distinguishable. While it is unwarranted to assume that a defendant will have the resources to support hypothetical future dependents, it is reasonable to think that if Armour accepts a job, he will be able to comply with this simple reporting requirement. Unlike the defendant in *Thompson*, Armour is not required to take on responsibilities that he may not be able to fulfill; rather, he need only notify his probation officer if he accepts a job. Thus, the district court did not abuse its discretion by imposing this condition.

### 6. *Prohibition Against Knowingly Interacting with Felons*

The district court prohibited Armour from "meet[ing], communicat[ing], or otherwise interact[ing] with any person whom [he] know[s] to be a convicted felon … or to be engaged in or planning to engage in criminal activity unless [he is] granted permission to do so by the probation officer." Armour argues that banning interactions with a convicted felon serves no valid purpose, but we disagree. The district court stated that the purpose of this condition is to limit Armour's exposure to triggers of negative behavior. Further, this condition includes a knowledge requirement, which distinguishes it from the conditions found to be fatally vague in *Kappes*, 782 F.3d at 848–49 (defendant forbidden from "associat[ing] with any person convicted of a felony, unless granted permission to do so by the probation officer"), and *Thompson*, 777 F.3d at 377 (same). Thus, this was not an abuse of discretion, especially given the district court's discussion of Armour's "long history of abusing drugs and

breaking the law, and despite numerous incarcerations, continued negative behavior."[3]

### 7. *Home Visits Between 6:00 AM and 11:00 PM*

Next, we turn to the condition that Armour "permit a probation officer to visit [him] at home or any other reasonable location between the hours of 6:00 AM and 11:00 PM, unless investigating a violation or in case of emergency." Armour argues that unlike probationers and parolees, his Fourth Amendment rights are fully in place during supervised release. He claims that allowing a probation officer to search his property without a valid warrant is an infringe-

---

[3] Armour also argues that giving the probation officer the power to determine whether Armour has permission to associate with convicted felons violates the non-delegation principle, citing *United States v. Voelker*, 489 F.3d 139 (3d Cir. 2007). Armour takes issue with the probation officer's authority to decide whether Armour can "work at a job where another felon is employed, attend a church where another felon worships, or shop at a store where a felon shops." However, *Voelker* is distinguishable from this case. In *Voelker*, the district court prohibited the defendant, who pled guilty to possessing child pornography, from associating with minors without the prior approval of the probation officer. *Id.* at 153. The Third Circuit found improper the "unbridled delegation of authority" that made the probation officer "the sole authority for deciding if [defendant] will ever have unsupervised contact with any minor, including his own children, for the rest of his life," with "no guidance whatsoever for the exercise of that discretion." *Id.* at 154. Delegating to a probation officer the authority to decide whether an offender will ever have unsupervised contact with his children again is more serious than delegating to a probation officer the authority to decide if Armour can interact with a convicted felon during his term of supervised release. Therefore, Armour has not shown that the district court's decision to impose this condition was an abuse of discretion.

ment on his Fourth Amendment rights. Armour is incorrect. This Court has stated:

> Although it is true that persons on supervised release, like prisoners, do not relinquish all constitutional rights, those rights are not unfettered. A court may impose conditions of supervised release which implicate fundamental rights so long as those conditions are reasonably related to the ends of rehabilitation and protection of the public from recidivism.

*United States v. Sines*, 303 F.3d 793, 801 (7th Cir. 2002) (citations omitted). This condition is reasonably related to rehabilitation and protecting the public from recidivism since it should allow probation officers to help Armour reintegrate into society after his time in prison and to ensure that he is abiding by the conditions of his supervised release. *See Johnson v. United States*, 529 U.S. 694, 709 (describing supervised release as "the decompression stage" between prison and full release and noting that defendants may need help achieving "successful reintegration").

Armour further argues that that the term "other reasonable location" is vague and may subject Armour to searches at a church, hospital, or funeral home. However, under most circumstances, those visits would be unreasonable and thus barred by the condition itself. Therefore, imposing this condition was not an abuse of discretion.

> 8. *Notifications of Arrests or Law Enforcement Questioning*

The district court also required Armour to "notify Probation within 72 hours of being arrested or questioned by law

enforcement." Armour argues that this condition violates his Fifth Amendment rights. We disagree. In *Kappes*, the defendant made this same argument in contesting an identical condition of supervised release. 782 F.3d at 850. This Court said it did not see "how the mere fact of an arrest or law enforcement contact is itself incriminating" and that "this condition assists the probation officer in monitoring the defendant's conduct and compliance with the other conditions of release, most notably, the mandatory condition that the defendant commit no other criminal offenses." *Id.* Accordingly, the district court did not abuse its discretion in imposing this condition.

### 9. *Prohibition on Controlled or Psychoactive Substances*

Finally, Armour's supervised release includes the condition that he "shall not purchase, possess, use, distribute, or administer any controlled substance or psychoactive substance." Armour is also required to, "at the direction of Probation, participate in a program for substance abuse treatment [and] abide by the rules of the treatment provider." Armour points out that the district court gave a lengthy oral explanation of the term "psychoactive" at the revocation hearing but that the explanation was not included in the written judgment. According to Armour, this is problematic because if a dispute were to arise about the condition, the parties are more likely to have access to the judgment than the sentencing transcript. However, sentencing judges are simply required to "orally pronounce all conditions, with the written judgment only clarifying the oral pronouncement in a manner that is not inconsistent with an unambiguous oral provision." *Kappes*, 782 F.3d at 839; *see also* Fed. R. Crim. P. 35(c) ("As used in this rule, 'sentencing' means the oral an-

nouncement of the sentence."); *United States v. Bryant*, 754 F.3d 443, 447 (7th Cir. 2014) ("[W]hen the written sentence differs from the oral, the oral [sentence] takes precedence."). Thus, if a dispute were to arise, there is no question that the oral explanation would control, and the district court did not abuse its discretion.

Armour also argues that he should have been given a copy of the treatment provider's rules prior to his resentencing so that he would have had adequate notice and an opportunity to object to them. We disagree. It would be more problematic to require a judge to provide these rules prior to sentencing, as it would be impractical to attempt to anticipate developments in how substance abuse is treated and to predict the type and success of the treatment the defendant receives while in prison. *See Thompson*, 777 F.3d at 374 (noting that "because conditions of supervised release, though imposed at sentencing, do not become operational until the defendant is released, the judge has to guess at the time of sentencing what conditions are likely to make sense in what may be the distant future").

Armour also finds it problematic that the probation office can determine how long he will be subject to drug treatment and testing, arguing that this violates the non-delegation principle. Armour cites *United States v. Voelker*, which is distinguishable. In *Voelker*, the court provided "no guidance whatsoever" for the probation office's exercise of discretion. 489 F.3d 139, 154 (3d Cir. 2007). By contrast, the district court in this case noted at the revocation hearing that Armour would only be subject to drug treatment and testing until it would "no longer assist [him] to avoid committing further

crimes." Accordingly, the district court did not abuse its discretion in ordering this condition.

### III. Conclusion

For the foregoing reasons, we AFFIRM.