**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

UNITED STATES OF AMERICA,
*Plaintiff-Appellee,*

v.

JORDAN JAMES LAMOTT,
*Defendant-Appellant.*

No. 15-30012

D.C. No.
4:14-cr-00053-BMM-1

OPINION

Appeal from the United States District Court
for the District of Montana
Brian M. Morris, District Judge, Presiding

Argued and Submitted June 7, 2016
Seattle, Washington

Filed August 2, 2016

Before: Richard A. Paez, Jay S. Bybee,
and Morgan Christen, Circuit Judges.

Opinion by Judge Christen

## SUMMARY[*]

### Criminal Law

Affirming a conviction, the panel held that assault by strangulation under 18 U.S.C. § 113(a)(8) is a general intent crime, and that the district court therefore did not plainly err by instructing the jury to disregard the defendant's voluntary intoxication, which is irrelevant to his guilt or innocence.

The panel held that the district court did not plainly err in a way that affected the outcome of the proceedings, when it instructed the jury that it must decide whether the defendant "wounded" the victim, rather than instructing it to decide whether he "assaulted" her.

### COUNSEL

Daniel Donovan (argued), Daniel Donovan, PC, Great Falls, Montana, for Defendant-Appellant.

Ryan George Weldon (argued), Assistant United States Attorney; Michael W. Cotter, United States Attorney; Office of the United States Attorney, Great Falls, Montana; for Plaintiff-Appellee.

---

[*] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

## OPINION

CHRISTEN, Circuit Judge:

In 2013, Congress added the offense of assault by strangulation to the federal assault statute, 18 U.S.C. § 113. The following year a jury convicted Jordan Lamott under this provision for nonfatally strangling his girlfriend. We must decide whether the jury was properly instructed to disregard Lamott's voluntary intoxication, which requires us to determine whether § 113(a)(8) is a general or specific intent crime. We also must decide whether the court's instruction to the jury on assault by strangulation violated Lamott's due process rights. We hold that assault by strangulation under § 113(a)(8) is a general intent crime, and Lamott's intoxication was therefore irrelevant. We find no plain error in the court's instruction on the elements of the offense. Accordingly, we affirm Lamott's conviction.

## I.

Violence against Native American women in Indian Country has reached alarming rates in the past few decades. *See United States v. Bryant*, 136 S. Ct. 1954, 1959 (2016). Recent studies suggest that Native American women experience certain violent crimes at two and a half times the national average. *Id.* (citing Dept. of Justice, Attorney General's Advisory Committee on American Indian and Alaska Native Children Exposed to Violence, Ending Violence So Children Can Thrive 38 (Nov. 2014)). Particularly pervasive among violent crime is nonfatal strangulation by domestic partners. *See* Nancy Glass et al., *Non-Fatal Strangulation Is an Important Risk Factor for Homicide of Women*, 35 J. Emergency Med. 329, 333 (2008).

Nearly half of domestic violence victims report being choked. *Id.* at 330, 333. Recent studies show that although nonfatal strangulation often leaves few visible signs of injury, it can cause severe physical, neurological, and psychological complications and often forebodes future domestic homicide. *See* Donald J. Smith, Jr. et al., *Frequency and Relationship of Reported Symptomology in Victims of Intimate Partner Violence: The Effect of Multiple Strangulation Attacks*, 21 J. Emergency Med. 323, 327–28 (2001); *see also* Glass, *supra*, at 329–33 (concluding that women who have been nonfatally strangled are over seven times more likely to become a victim of homicide with the same partner). The recent increased focus on the dangers of nonfatal strangulation confirms what "[s]urvivors of non-fatal strangulation have known for years": "Many domestic violence offenders and rapists do not strangle their partners to kill them; they strangle them to let them know they can kill them—any time they wish." Casey Gwinn, *Strangulation and the Law*, *in* The Investigation and Prosecution of Strangulation Cases 5, 5 (2013).

These concerns helped motivate the reauthorization in 2013 of the Violence Against Women Act (VAWA). 159 Cong. Rec. S480-02, S488 (daily ed. Feb. 7, 2013) (statement of Sen. Udall). In relevant part, the Act amended the federal assault statute to add a provision directed toward victims of nonfatal strangulation by a domestic partner. Violence Against Women Reauthorization Act of 2013, Pub. L. No. 113-4, 127 Stat. 54. The newly added section (a)(8) criminalizes "[a]ssault of a spouse, intimate partner, or dating partner by strangling, suffocating, or attempting to strangle or suffocate." 18 U.S.C. § 113(a)(8).

Just over a year after § 113(a)(8) was enacted, on March 28, 2014, Jordan Lamott returned home with his girlfriend,

J.F., and nonfatally strangled her several times. Lamott and J.F. are Native Americans and live on the Blackfeet Indian Reservation in Montana.

That evening the couple had been out with friends, and Lamott had been drinking. J.F. testified that Lamott became jealous of one of J.F.'s friends, and when the couple returned to Lamott's house, Lamott pushed J.F. onto the bed in the living room and began strangling her. J.F. fought back and scratched at Lamott's face. Lamott then picked up J.F. by her hair, hit her on the head, dropped her on the bed, and began strangling her again. Lamott lost his balance, and J.F. momentarily escaped to the bathroom. Lamott entered the bathroom, grabbed J.F. by her legs, and dragged her back to the bed, where he strangled her again until she passed out. At some point J.F. regained consciousness, left Lamott's house, and eventually went to a hospital to receive treatment.

Lamott was charged with: (1) assault by strangulation, 18 U.S.C. § 113(a)(8); and (2) assault resulting in serious bodily injury, § 113(a)(6). The District of Montana had jurisdiction under 18 U.S.C. § 1153(a), which confers jurisdiction over federal assaults committed by an Indian against another Indian in Indian Country. After a two-day trial, a jury convicted Lamott on the charge of assault by strangulation, but hung on the charge of assault resulting in serious bodily injury, which the government later dismissed. Lamott was sentenced to 32 months' imprisonment, and he timely appealed. We have jurisdiction under 28 U.S.C. § 1291.

## II.

Lamott challenges two jury instructions on appeal. First, he argues the court erred by instructing the jury to disregard evidence of his voluntary intoxication because, he contends, assault by strangulation is a specific intent crime. Second, he argues the court erred by instructing the jury that, in order to convict, it must find Lamott *wounded* J.F. by strangling her, rather than instructing that it must find Lamott *assaulted* J.F. by strangling her, consistent with the statute and indictment. Lamott did not object to either instruction, so our review is for plain error. *See* Fed. R. Crim. P. 52(b).

## A.

We first address Lamott's challenge to the intoxication instruction. Lamott concedes that voluntary intoxication is a defense to specific intent crimes, but not to general intent crimes. *See United States v. Jim*, 865 F.2d 211, 212 (9th Cir. 1989). Thus, we must decide whether assault by strangulation under § 113(a)(8) is a specific or general intent crime.

"Few areas of criminal law pose more difficulty than the proper definition of the *mens rea* required for any particular crime." *United States v. Bailey*, 444 U.S. 394, 403 (1980). In particular, the distinction between general and specific intent "has been the source of a good deal of confusion." *Id.* In a crime requiring "specific intent," the government must prove that the defendant subjectively intended or desired the proscribed act or result. *See Jim*, 865 F.2d at 213. By contrast, a general intent crime requires only that the act was volitional (as opposed to accidental), and the defendant's state of mind is not otherwise relevant. *See generally id.* at

212–13. The practical difference between the two is that certain defenses, like factual mistake and voluntary intoxication, can negate culpability for specific intent crimes but not for general intent crimes. *United States v. Gracidas-Ulibarry*, 231 F.3d 1188, 1196 (9th Cir. 2000) (en banc).

To determine whether § 113(a)(8) is a general or specific intent crime, we look first to the text of the statute. *See Jim*, 865 F.2d at 213. Section (a)(8) criminalizes: (1) "assault[ing] . . . a spouse, intimate partner, or dating partner"; (2) "by strangling[ or] suffocating." The statute does not specify a mens rea requirement, nor does it define "assault." For this reason we have previously applied the common law definition of assault to § 113 crimes. *See United States v. Lewellyn*, 481 F.3d 695, 697 (9th Cir. 2007) (interpreting § 113(a)(5)); *see also United States v. Shabani*, 513 U.S. 10, 13 (1994) ("[A]bsent contrary indications, Congress intends to adopt the common law definition of statutory terms."). Common law assault is defined as "(1) 'a willful attempt to inflict injury upon the person of another,' also known as 'an attempt to commit battery,' or (2) 'a threat to inflict injury upon the person of another which, when coupled with an apparent present ability, causes a reasonable apprehension of immediate bodily harm.'" *Lewellyn*, 481 F.3d at 697 (quoting *United States v. Dupree*, 544 F.2d 1050, 1051 (9th Cir. 1976)).

We have previously held that common law assault is a specific intent crime, *see Jim*, 865 F.2d at 213, but that does not end our analysis, for we must determine whether the statute's context or legislative history "give[] any indication that Congress intended not to incorporate the common law meaning of the term" into § 113(a)(8), *Gracidas-Ulibarry*, 231 F.3d at 1193; *see also Jim*, 865 F.2d at 213–15

(explaining that although 18 U.S.C. § 111 incorporated the common law definition of assault requiring specific intent, the statute's context and legislative history demonstrated Congress intended it be a general intent crime).

Several factors indicate that Congress intended assault by strangulation to require a showing only of general intent. First, three of the eight federal assault offenses contain the words "with intent to," but section (a)(8) does not.  *See* § 113(a)(1), (a)(2), (a)(3).   While not dispositive of the general vs. specific intent question, where Congress "intend[s] to legislate a specific intent crime," the statute typically uses the phrase "with the intent to."  *United States v. Meeker*, 527 F.2d 12, 14–15 (9th Cir. 1975) (alteration in original) (determining that intimidating any flight crew member "*so as to* interfere with the performance . . . of his duties" was a general intent crime, in part because Congress used "so as to" rather than "with the intent to" (emphasis added)).  That the federal assault statute uses this phrase only in sections (a)(1)–(a)(3) is consistent with section (a)(8) requiring general intent.

Second, while the statute does not define "assault," it does define "strangling" as "intentionally, knowingly, or recklessly impeding the normal breathing or circulation . . . regardless of whether . . . there is any intent to kill or protractedly injure the victim."  § 113(b)(4).  Because strangling can be done knowingly, or even recklessly, and because the definition explicitly disclaims the requirement of "any intent to kill or protractedly injure," it is not likely Congress intended that "assault . . . by strangling" require specific intent.  *See Gracidas-Ulibarry*, 231 F.3d at 1196 ("In general, 'purpose' corresponds to the concept of specific intent, while 'knowledge' corresponds to general intent.").

Third, it appears Congress intended § 113 to operate not merely as an assault statute but rather as an assault and battery statute, and battery is a general intent crime. *See United States v. Delis*, 558 F.3d 177, 180 (2d Cir. 2009). The terms "assault" and "battery" took different meanings at common law, but in recent years "[t]he distinction between assault and battery . . . has been regularly elided," and the words "have often been used interchangeably." *Id.* at 181; *see also Voisine v. United States*, 136 S. Ct. 2272, 2281 n.5 (2016) (noting that recent developments "make[] the common law a bad match for the ordinary misdemeanor assault and battery statutes in Congress's sightline"). That Congress meant "battery" when it said "assault" in § 113 is evidenced by the fact that many of § 113's provisions (including the one at issue in this case) require physical contact—a hallmark of common law battery but not of common law assault. *See United States v. Watts*, 798 F.3d 650, 652–53 (7th Cir. 2015) ("In 18 U.S.C. § 113(a), 'assault' primarily means common law 'battery,'" and, specifically, "subsection[] . . . (8) punish[es] common law battery.").

Last, the legislative record surrounding the passage of § 113(a)(8) indicates Congress intended that it require general, not specific intent. Congress enacted the VAWA Reauthorization Act of 2013 in part to "decrease the incidence of violent crimes against Indian women." S. Rep. No. 112-265, at 1 (2012); *see also United States v. Bryant*, 136 S. Ct. 1954, 1959 (2016) ("'[C]ompared to all other groups in the United States,' Native American women 'experience the highest rates of domestic violence.'" (quoting 151 Cong. Rec. 9061 (2005) (remarks of Sen. McCain))). It was concerned with "the gradual escalation of seriousness often associated with domestic violence offenses," 159 Cong. Rec. E217-03, E218 (daily ed. Feb. 28, 2013) (statement of

Rep. Jackson Lee), and sought to "protect Native women from an epidemic of domestic violence . . . by allowing Federal prosecutors to seek tougher sentences for perpetrators who strangle or suffocate their spouses or partners," 159 Cong. Rec. S480-02, S488 (daily ed. Feb. 7, 2013) (statement of Sen. Udall). Thus, Congress was focused broadly on the act of domestic abuse of Native women—not on the mindset of defendants. This concern is best addressed with a general intent statute. *See United States v. Meeker*, 527 F.2d 12, 14 (9th Cir. 1975) (determining that a statute criminalizing assault of flight crew members required only general intent, in part because Congress was concerned "not [with] the formation of a specific intent to interfere with aircraft operations but [with] the criminal act of an assault, intimidation or threat upon airline personnel during flight"); *see also United States v. Jim*, 865 F.2d 211, 214–15 (9th Cir. 1989) (determining 18 U.S.C. § 111 is a general intent crime, in part because Congress was concerned with preventing the act of assault on federal officers rather than with the mindset of the defendant).

We are persuaded by the text and history of section (a)(8) that Congress intended assault by strangulation to require only general intent. Lamott's voluntary intoxication was therefore not relevant to his guilt or innocence, and the district court did not plainly err by instructing the jury to disregard it.[1]

---

[1] Lamott contends that even if § 113(a)(8) is a general intent crime, the government converted it to a specific intent crime by charging in the indictment that Lamott "*intentionally* assaulted J.F. . . . by strangling." We disagree. "Intentionally" applies to the act itself, and serves merely to distinguish nonvolitional or accidental conduct. The requirement that an act be done "intentionally" is "a perfectly adequate formulation of the idea of general intent." *United States v. Smith*, 638 F.2d 131, 133 (9th Cir.

**B.**

Lamott also challenges the jury instruction on assault by strangulation. He contends the prosecution was relieved of its burden to prove every element of the offense beyond a reasonable doubt because the district court instructed the jury that it must decide whether Lamott "wounded" J.F., rather than instructing it to decide whether Lamott "assaulted" her. Because Lamott did not object at trial, we review the instruction for plain error. Fed. R. Crim. P. 52(b).

The statue proscribes:

> Assault of a spouse, intimate partner, or dating partner by strangling, suffocating, or attempting to strangle or suffocate . . . .

§ 113(a)(8). Count I of the indictment charged that Lamott:

> [I]ntentionally assaulted J.F. . . . by strangling J.F., in violation of 18 U.S.C. §§ 1153(a) and 113(a)(8).

The government proposed the jury be instructed, in relevant part, that in order to convict, it must find "the defendant assaulted J.F. by intentionally striking or wounding her . . . [and] the defendant did so by strangling J.F." Lamott did not

---

1981). And even if we were to assume that the use of "intentionally" in the indictment and jury instruction required the jury to find specific intent, that would be "a 'windfall' for the defendant," and would "not entitle him to a diminished capacity defense, which is only cognizable for specific intent crimes." *United States v. Martinez*, 49 F.3d 1398, 1401 (9th Cir. 1995) (superceded by statute as stated in *United States v. Randolph*, 93 F.3d 656, 661 (9th Cir. 1996)).

object to the proposed instruction. The district court instructed the jury that to convict, it must find "the defendant intentionally wounded J.F. by strangling her." Again, Lamott did not object, but he now argues that the court should have required the jury to decide whether "the defendant intentionally assaulted J.F. by strangling her."

We agree with Lamott that use of the word "assaulted" rather than "wounded" would have more closely tracked the indictment and the language of § 113(a)(8). But we disagree that the court plainly erred in a way that "affect[ed] the outcome of the proceedings." *United States v. Fuchs*, 218 F.3d 957, 962 (9th Cir. 2000) (quoting *United States v. Baron*, 94 F.3d 1312, 1318 (9th Cir. 1996)). In addition to instructing the jury that it must find Lamott "intentionally wounded J.F. by strangling her," the court also instructed that "strangling means . . . impeding the normal breathing or circulation of the blood of a person by applying pressure to the throat or neck." Lamott did not object to this instruction, nor does he challenge it on appeal, and the jury plainly found that Lamott "strangled" J.F. Given the court's definition of "strangling," we can conceive of no way that Lamott could have strangled J.F. without assaulting her. This is true under either common law definition of assault: the "attempt to commit battery" definition or the "reasonable apprehension of immediate bodily harm" definition. *See United States v. Lewellyn*, 481 F.3d 695, 697 (9th Cir. 2007). The district court's inclusion of the word "wounded" may have been superfluous, but if anything, the inclusion of "wounded" in the instruction required that the government meet a *higher* burden than was necessary because section (a)(8) does not

require proof of a wound or injury.  That the jury found one here only reinforces that an assault occurred.**[2]**

\*     \*     \*

Congress added section (a)(8) to the federal assault statute as part of a widespread effort to protect Native American women from the growing problem of domestic abuse.  This case falls squarely within the provision's reach.  Because assault by strangulation is a general intent crime, the court did not err by instructing the jury to disregard Lamott's intoxication.  Nor do we find plain error in the court's instruction on assault.

**AFFIRMED.**

---

[2] Even if we were unconvinced that the court's strangulation instruction rendered its substitution of "wounded" for "assaulted" harmless, the government offers another basis to affirm: assault can be established by proving battery, and wounding constitutes a battery.  We have recognized that "assault is an attempted battery and proof of a battery will support conviction of an assault." *Lewellyn*, 481 F.3d at 697 (quoting *United States v. Dupree*, 544 F.2d 1050, 1052 (9th Cir. 1976)).  We have also recognized that "assault by . . . wounding[] is the equivalent of simple battery." *United States v. Juvenile Male*, 930 F.2d 727, 728 (9th Cir. 1991) (quoting *United States v. Knife*, 592 F.2d 472, 482 (8th Cir. 1979)).  Because wounding is a battery, and proof of a battery can support a conviction for assault, any error in the district court's decision to replace "assaulted" with "wounded" was not plain.