In the

# United States Court of Appeals
## For the Seventh Circuit

No. 14-1316

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

DAVID M. THOMPSON,

*Defendant-Appellant.*

Appeal from the United States District Court for the
Southern District of Illinois.
No. 3:12-cr-30316-MJR-1 — **Michael J. Reagan**, *Chief Judge.*

No. 14-1521

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

DEREK ORTIZ,

*Defendant-Appellant.*

Appeal from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 10 CR 187-1 — **Matthew F. Kennelly**, *Judge.*

No. 14-1676

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

CHARLES BATES,

*Defendant-Appellant.*

————————————

Appeal from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 12 CR 700-1 — **Charles R. Norgle, Sr.**, *Judge.*

————————————

No. 14-1772

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

DOMINGO BLOUNT,

*Defendant-Appellant.*

————————————

Appeal from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 11 CR 415-1 — **Gary S. Feinerman**, *Judge.*

————————————

ARGUED NOVEMBER 13, 2014  — DECIDED JANUARY 13, 2015

————————————

Before POSNER, KANNE, and ROVNER, *Circuit Judges*.

POSNER, *Circuit Judge*. We have consolidated for decision four appeals, heard on the same day, that present issues relating to supervised release. In a recent opinion, *United States v. Siegel*, 753 F.3d 705 (7th Cir. 2014), the court expressed concern with how the district courts of our circuit are administering supervised release. To recapitulate briefly the fuller discussion in the *Siegel* opinion, the Sentencing Reform Act of 1984 replaced parole for federal crimes with supervised release (to take effect in 1987). 18 U.S.C. § 3583. Parole of federal convicts is granted (though nowadays only in a very limited class of cases, see United States Parole Commission, *Wikipedia*, http://en.wikipedia.org/wiki/United_States_Parole _Commission (visited Jan. 11, 2015, as was the other website cited in this opinion)) by an administrative agency after a convicted defendant begins serving his sentence. An inmate granted parole is thus released from prison before the expiration of his term, but becomes subject to restrictions imposed by the agency on his conduct between his release and when, had he not been paroled, he would have been released upon the expiration of his prison sentence. The restrictions are intended to reduce the likelihood of his committing crimes in the future.

Supervised release, in contrast to parole, consists of restrictions, imposed by the judge at sentencing, called conditions or terms of supervised release, that are to take effect when the defendant is released from prison and continue for a specified term of years (which can be life). Parole shortens prison time, substituting restrictions on the freed prisoner. Supervised release does not shorten prison time; instead it imposes restrictions on the prisoner to take effect upon his

release from prison. Parole mitigates punishment; supervised release augments it—most dramatically when the defendant, having been determined to have violated a condition or conditions of supervised release, is given, as punishment, a fresh term of imprisonment. 18 U.S.C. § 3583(e)(3). Supervised release is required by statute in fewer than half of cases subject to the sentencing guidelines. United States Sentencing Commission, *Federal Offenders Sentenced to Supervised Release* 3 (July 2010), www.ussc.gov/sites/default/files/ pdf/training/annual-national-training-seminar/2012/2_Feder al_Offenders_Sentenced_to_Supervised_Release.pdf. In the other cases the sentencing judge has discretion to order or not order it, see 18 U.S.C. § 3583(a), but almost always the judge orders it in those cases too, United States Sentencing Commission, *supra*, at 69–70, often without explaining why. Although the defendants in our four cases object to particular conditions of supervised release imposed on them, they do not challenge the propriety of the inclusion of some conditions of supervised release in their sentences.

Supervised release as it is designed and administered has turned out to be problematic in a number of respects. See, e.g., Christine S. Scott-Hayward, "Shadow Sentencing: The Imposition of Federal Supervised Release," 18 *Berkeley J. Crim. L.* 180 (2013); Fiona Doherty, "Indeterminate Sentencing Returns: The Invention of Supervised Release," 88 *N.Y.U. L. Rev.* 958 (2013). One is that the list of conditions required or suggested is very long. The supervised-release statute, 18 U.S.C. § 3563(b), imposes 9 "mandatory" conditions and 23 "discretionary conditions," for a total of 32. The sentencing guidelines get into the act as well, see U.S.S.G. § 5B1.3, imposing 10 "mandatory" conditions, 14 "standard" conditions, and 13 "special" or "additional conditions"—a

total of 37. The statutory and guideline conditions, where they overlap, are generally the same substantively, but their wording often differs. Sentencing judges usually use the guideline wording rather than the statutory wording. All but the mandatory conditions are optional. And the judge is free to add or substitute (except with regard to the mandatory conditions) conditions of his own devising. Understandably, given the number of conditions, many district judges simply list the conditions that they impose, devoting little or no time at sentencing to explaining them or justifying their imposition.

Because conditions of supervised release do not take effect until the defendant completes his prison term and is released, defendants given long prison sentences—and long prison sentences are common in federal sentencing—often have little interest in contesting conditions of supervised release at sentencing. Criminals who court long prison sentences tend to have what economists call a high discount rate. That is, they give little weight to future costs and benefits. Defendants or their lawyers may also worry that a successful challenge to a condition or conditions of supervised release may induce the judge to impose a longer prison sentence, thinking that resistance to supervised release implies recidivist tendencies or intentions. And often a defendant is given no notice in advance of the sentencing hearing of the conditions of supervised release that the judge is thinking of imposing, which can make it difficult for his lawyer to prepare arguments in opposition.

Many district judges appear to have overlooked the fact that because the imposition of conditions of supervised release is part of the sentence, a sentencing judge is required

by the Supreme Court's decision in *United States v. Booker*, 543 U.S. 220 (2005), to evaluate the propriety of any conditions of supervised release that the judge is thinking of imposing, by applying to the proposed conditions the sentencing considerations listed in 18 U.S.C. § 3553(a). The considerations include (in subsections (1), (2), and (3) respectively) "the nature and circumstances of the offense and the history and characteristics of the defendant," "the need for the sentence imposed," and "the kinds of sentences available."

Any doubt that conditions of supervised release are a part of the sentence and subject therefore to the requirement that the judge before imposing sentence apply the sentencing factors in section 3553(a) is dispelled by 18 U.S.C. § 3583(c). It provides that "the court, in determining whether to include a term of supervised release, and, if a term of supervised release is to be included, in determining the length of the term and the conditions of supervised release, shall consider the factors set forth in [eight enumerated subsections of] section 3553(a)." And being part of the sentence, the imposition of conditions of supervised release is subject to the further requirements that "the court, at the time of sentencing, shall state in open court the reasons for its imposition of the particular sentence," 18 U.S.C. § 3553(c), and "in determining the length of the term and the conditions of supervised release, shall consider the factors set forth in" eight enumerated subsections of section 3553(a). 18 U.S.C. § 3583(c).

Subsection (a) of section 3553 lists the sentencing factors that the judges are to consider in determining the sentence. From the omission of subsection 3553(a)(2)(A), the court in *United States v. Murray*, 692 F.3d 273, 280 (3d Cir. 2012), in-

ferred "that the primary purpose of supervised release is to facilitate the reentry of offenders into their communities, rather than to inflict punishment." The omitted subsection (a)(2)(A) is "the need for the sentence imposed … to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense."

The sheer number of conditions may induce haste in a sentencing judge's evaluation of the recommendations of the probation officer assigned to the case as to what conditions of supervised release to impose (if there are such recommendations—often there are not; there are not in any of the four cases before us) and is doubtless a factor in judges' frequent omission to mention *any* of the sentencing factors in section 3553(a) or even any of the conditions recommended by the parties or the probation officer that the judge decides to include in the sentence.

And because conditions of supervised release, though imposed at sentencing, do not become operational until the defendant is released, the judge has to guess at the time of sentencing what conditions are likely to make sense in what may be the distant future. Conditions that may seem sensible at sentencing may not be sensible many years later, when the defendant is finally released from prison. Although nonmandatory conditions of supervised release can be modified at any time, 18 U.S.C. § 3583(e)(2), modification is a bother for a judge, especially when, as is common in cases involving very long sentences, it becomes the responsibility of the sentencing judge's successor because in the meantime the sentencing judge has retired or died, resigned, or been promoted. Furthermore, although reducing recidivism is the purpose of supervised release, it is difficult, often impossi-

ble, to predict whether a defendant is likely upon release to resume criminal activity. Often rehabilitation is named as an additional purpose of supervised release, but being rehabilitated and going straight are as a practical matter synonymous.

Another wrinkle is that because conditions of supervised release are imposed at sentencing, the conditions recommended to the judge at the sentencing hearing may be a product of negotiation between prosecution and defense. The defendant's lawyer may offer the prosecution a trade—more supervised release for a reduced prison term—and the prosecutor may agree. And when adversaries agree on the outcome of a legal proceeding the sentencing judge, habituated as American judges are to adversary procedure, may be reluctant to subject the agreement to critical scrutiny, even though the law is clear that the fact that the prosecution and defense agree on a sentence does not excuse the judge from having to determine the sentence's conformity to the statutory sentencing factors. *Freeman v. United States*, 131 S. Ct. 2685, 2692 (2011).

Still another problem is that probation officers, upon whom district judges rely heavily for recommendations concerning what conditions of supervised release to impose, spend disproportionate time on enforcement (that is, investigating violations of conditions of supervised release and recommending punishments for the violators) and have little time left over for suggesting appropriate conditions and helping the probationer to comply with them. This is a serious problem given the severe understaffing of the probation service that we discussed in the *Siegel* opinion, 753 F.3d at 710, and the reliance that most district judges repose in the

recommendations of the probation officer assigned to the case when the officer makes recommendations. A revocation of supervised release and recommital to prison relieves the probation service of monitoring the person during his term of imprisonment. According to Scott-Hayward, *supra*, at 182 (footnotes omitted), "on average, one third of those individuals [on supervised release] will have their supervised release revoked, most as a result of technical violations, and receive, on average, a new prison sentence of 11 months."

And finally a number of the listed conditions, along with a number of conditions that judges invent, are, as we're about to explain, hopelessly vague. See also our *Siegel* opinion, 753 F.3d at 712–16, for a fuller discussion of vagueness and ambiguity in conditions of supervised release.

Given the problems we've enumerated, it is no surprise that the administration of supervised release by the district courts has not run smoothly. The types of oversights that we'll be discussing—well illustrated by our four cases—are understandable, perhaps indeed inevitable, given the confusion that the applicable statutory and guidelines provisions have created.

We begin with *United States v. Thompson*. Thompson was 23 years old when he began an online relationship with a girl of 14. They exchanged nude pictures of themselves. When she was 16 and he 25 she decided to run away from home. Thompson picked her up and drove her across state lines, and they had sex in a state in which the age of consent was 16 and their sexual activity therefore legal. Convicted in federal district court of possession of child pornography, and of traveling in interstate commerce for the purpose of engaging in sexual conduct, in violation of federal laws that fix the age

of consent as 18 rather than, as in many states, 16, see, e.g., 18 U.S.C. § 2423(a), Thompson was sentenced to 210 months in prison. He does not challenge the prison sentence, but only conditions of supervised release.

Even with full credit for behaving himself in prison, Thompson will be just days short of 41 years old when released, and it seems odd to be devising so far in advance restrictions to impose on him then; but that is how supervised release operates. What is beyond odd—what is unauthorized—is that the judge imposed a lifetime of supervised release without any articulated justification. The need for an express justification was acute because, as the judge remarked, as a convicted sex offender Thompson will be subject after he is released from prison to a lifetime of mandatory state and local sex-offender reporting quite apart from supervised release. And sensible or not, the lifetime term is vitiated by the fact that in imposing it the judge was laboring under the misapprehension that, in his words, "a term of supervised release can be reduced but can't be extended." That's wrong; it can be extended. 18 U.S.C. §§ 3583(e)(1)-(2); Fed. R. Crim. P. 32.1(c).

It's not that the judge thought that Thompson after being released from prison will be a menace to young girls until he dies perhaps as an octogenarian or even a nonagenarian. It is rather, as the judge explained, that because the future cannot be predicted, any term of supervised release shorter than life would create a risk that Thompson would commit further crimes at an advanced age. But should that risk seem acute many years from now when Thompson completes his prison term, a finite term of supervised release could be extended, as the judge failed to understand. We are surprised that nei-

ther the government nor the defense pointed out the judge's error at the sentencing hearing.

The judge committed other errors. One was his failure to include in the oral sentence a condition of supervised release requiring that the defendant receive treatment for drug addiction. Not because it's a mandatory condition or one that the judge would have been remiss in failing to impose, but because, though he intended to impose it, it appears only in the written judgment, and the oral sentencing, which omits it, takes precedence over the written. *United States v. Johnson*, 765 F.3d 702, 710–11 (7th Cir. 2014); *United States v. Alburay*, 415 F.3d 782, 788 (7th Cir. 2005).

A more serious error was a condition of supervised release that Thompson not have "any contact with persons under the age of 18 unless in the presence of a responsible adult who is aware of the nature of the defendant's background and instant offense and who had been approved by the probation officer." This can't have been meant literally, since understood literally it would include males under 18 as well as females, though there is no suggestion that Thompson is bisexual. Furthermore, even if males are excluded from the no-contact rule, "contact," being undefined, could be understood to mean being served by a waitress, paying a cashier, sitting next to a girl (a stranger) at a baseball game, replying to a girl asking directions, or being shown a friend's baby girl—or his own baby, for that matter.

We have warned against imposing a restrictive condition that is not reasonably related to the defendant's "offense, history and characteristics. … Moreover, given the potentially severe restrictions on [the defendant's] day-to-day life that this condition imposes, the district court's lack of explana-

tion of why it thinks this condition involves no greater deprivation of liberty than necessary to achieve the penological goals stated in 18 U.S.C. § 3553(a) is troubling. … Because the district court has not provided any explanation of how this condition is reasonably related to [the defendant's] offense and background or to the goals of punishment, involving no greater deprivation of liberty than is reasonably necessary to achieve these goals, we vacate the condition." *United States v. Goodwin*, 717 F.3d 511, 523–24 (7th Cir. 2013).

The judge in Thompson's case imposed a total of 24 nonmandatory conditions of supervised release. Because all those conditions were part of the sentence, the judge was, as we noted earlier in this opinion (as well as in *Goodwin* and *Siegel*) not permitted to impose them without determining their conformity to the sentencing factors in 18 U.S.C. § 3553(a). There is no indication that he did so. He just checked boxes in a list of conditions. Some of the conditions seem appropriate or innocuous, but others are either inappropriate or vague. Among the inappropriate ones is that the "defendant shall support his or her dependents and meet other family responsibilities." Of course "or her" should not be in there; its inclusion suggests the rote nature of the judge's imposition of conditions of supervised release. More important, the condition assumes arbitrarily and maybe inaccurately that should Thompson ever acquire dependents he will have, despite being an ex-con subject to conditions of supervised release and state and local sex-offender restrictions and reporting requirements, the resources necessary to support his dependents.

Among the vague conditions is that "defendant shall refrain from excessive use of alcohol," where "excessive use"

is not defined, though it could readily be defined, as we explained in *United States v. Siegel*, *supra*, 753 F.3d at 715–16**.** Fatally vague is a condition forbidding the defendant to "associate with any person convicted of a felony, unless granted permission to do so by the probation officer." How would the defendant know whether someone he was associating with had ever been convicted of a felony? There is no stated requirement that he know; the condition appears to impose strict liability. If so, to protect himself he would have to submit the name of any person he met to his probation officer to determine whether the name appeared in any database of felons. Maybe liability for violating the condition isn't strict; so might it be enough that a reasonable person would know that a person whom the defendant was associating with was a felon, even if the defendant didn't know? And what exactly is "association"? Is a single meeting enough, or is the word intended to denote friendship, acquaintanceship, or frequent meetings? What if a dependent whom Thompson will be required to support when he is released from prison is convicted of a felony? Must he stop associating with that person as well? Would it not be more sensible to scrap the quoted condition and instead forbid the defendant "to meet, communicate, or otherwise interact with a person whom he knows to be engaged, or planning to be engaged, in criminal activity"?

The government offers the blanket defense that Thompson waived any objection to the conditions of supervised release that the judge imposed. The judge had sent a list of the conditions, with checkmarks next to the ones he was considering imposing, to the parties in advance of the sentencing hearing and the government argues that this was the defendant's (more realistically, his lawyer's) last chance to op-

pose them. But the judge didn't indicate why he was think-ing of imposing these conditions. A judge cannot properly decide what sentence to impose without consideration of the sentencing factors in 18 U.S.C. § 3553(a). If upon considera-tion of these factors he decides that he's leaning toward im-posing particular conditions, he should inform the parties of the conditions and the possible reasons for imposing them, so that they can develop arguments pro or con to present at the sentencing hearing. (It would likewise be a better prac-tice for the presentence report to give reasons for any condi-tions of supervised release that it suggests, but as we said the presentence reports in these four cases did not suggest any conditions of supervised release.) An alternative would be for the judge to explain at the sentencing hearing what conditions he was inclined to impose and why, and ask the defendant's lawyer whether he objects to any of them; if the lawyer had a reasonable need for more time to decide whether he has grounds for objection, the judge could ad-journ the hearing.

Either of our suggested approaches would be a "best practice," which is different from a required practice; for ex-cept with regard to conditions of supervised release not listed in the statute or the guidelines, *United States v. Bryant*, 754 F.3d 443, 446 (7th Cir. 2014), no advance notice is re-quired. *Id.* at 446–47; *United States v. McKissic*, 428 F.3d 719, 725–26 (7th Cir. 2005); *United States v. Lopez*, 258 F.3d 1053, 1055–56 (9th Cir. 2001); *United States v. Barajas*, 331 F.3d 1141, 1143–45 (10th Cir. 2003). This conclusion follows from the Supreme Court's decision in *Irizarry v. United States*, 553 U.S. 708 (2008). The district judge in that case had imposed a sen-tence in excess of the sentence recommended in the presen-tence report without prior notification to the parties. The

Supreme Court held that this lack of notice didn't require reversal.

But that holding is consistent with *Barajas*, where we read that "there may be occasions when a defendant has a good reason for not being prepared to address at sentencing the imposition of a condition of supervised release listed in the Sentencing Guidelines. In such a circumstance the district court can exercise its sound discretion to grant a continuance," *id.* at 1145—though we would be inclined to substitute "should" for "can" in the last clause of the quoted passage. For in *Irizarry* itself we read that

> Rule 32(i)(1)(C) [of the Federal Rules of Criminal Procedure] requires the district court to allow the parties to comment on "matters relating to an appropriate sentence," and given the scope of the issues that may be considered at a sentencing hearing, a judge will normally be well advised to withhold her final judgment until after the parties have had a full opportunity to present their evidence and their arguments. Sentencing is "a fluid and dynamic process and the court itself may not know until the end whether a variance will be adopted, let alone on what grounds." … Sound practice dictates that judges in all cases should make sure that the information provided to the parties in advance of the hearing, and in the hearing itself, has given them an adequate opportunity to confront and debate the relevant issues. We recognize that there will be some cases in which the factual basis for a particular sentence will come as a surprise to a defendant or the Government. The more appropriate response to such a problem is not to extend the reach of Rule 32(h)'s notice requirement categorically, but rather for a district judge to consider granting a continuance when a party

> has a legitimate basis for claiming that the surprise was
> prejudicial."

553 U.S. at 715–16. Because we're remanding in Thompson's case, the defendant's lawyer should be permitted to wait until the sentencing hearing to present his objections to whatever conditions of supervised release the judge is minded to impose.

We need to note an exception to our "best practice" suggestion, however. Some conditions of supervised release are administrative requirements applicable whenever a term of supervised release is imposed, regardless of the substantive conditions that are also imposed. Examples are requiring the defendant to report to his probation officer, answer the officer's questions, follow his instructions, and not leave the judicial district without permission. Once the judge has explained why supervised release is necessary, he should be permitted to impose the necessary incidents of supervision without explanation. It is not correct, however, as has been suggested, that all the standard conditions are "'basic administrative requirement[s] essential to the functioning of the supervised release system.'" *United States v. Truscello*, 168 F.3d 61, 63–64 (2d Cir. 1999). To similar effect see *United States v. Tulloch*, 380 F.3d 8, 13–14 (1st Cir. 2004). Most of them are substantive rather than administrative.

So much for Thompson's sentence; on to *United States v. Ortiz*. This defendant pleaded guilty to three bank robberies and was sentenced to prison for 135 months. Twenty-one conditions of supervised release were imposed, all but one to remain in force for three years after his release from prison. As in Thompson's case, the appeal does not challenge the prison sentence but only conditions of supervised release.

The presentence report, prepared (as is normal) by the probation officer assigned to the case, contained no suggested conditions of supervised release at all. Nor had the prosecution suggested any. They were sprung on the defendant at the sentencing hearing, and with such brevity that we don't think his lawyer can be faulted for having failed to object. The judge's entire discussion of supervised release consisted of the following sentence: "The conditions of supervised release will include the normal conditions, plus drug testing up to the maximum that's permitted, drug counseling and treatment at the direction of the probation office, and mental health counseling and treatment at the direction of the probation office, which may include taking necessary prescription medications." It's not clear what the judge meant by "normal conditions," but the written judgment lists 3 mandatory conditions (DNA collection, drug testing, and a prohibition against committing further crimes), 13 standard conditions (judges usually exclude from the guidelines list of 14 standard conditions the last one, which relates to the payment of the financial obligations imposed by the sentence; for some reason not known to us this requirement is incorporated into another part of the standard form that is issued to defendants when they receive their sentences), and 5 additional conditions (a firearm prohibition, a drug treatment program, mental health counseling, a requirement that the defendant report to the probation office within 72 hours of his release from prison, and that he pay restitution). Far from applying the sentencing factors in 18 U.S.C. § 3553(a) to the conditions of supervised release that he was imposing, the judge gave no reasons at all for any of the conditions.

The conditions imposed are riddled with ambiguities. Example: "as directed by the probation officer, the defendant

shall notify third parties of risks that may be occasioned by the defendant's criminal record or personal history or characteristics." There is no indication of what is meant by "personal history" and "characteristics" or what "risks" must be disclosed to which "third parties." The defendant is to notify his probation officer of any "change in … employment," but there is no indication whether change in employment just means changing employers or also includes changing from one position to another for the same employer at the same workplace. The defendant is forbidden to "frequent places where controlled substances are illegally sold, used, distributed, or administered," but there is no requirement that he know or have reason to know or even just suspect that such activities are taking place. Nor is there any indication of how many trips constitute "frequent[ing]" such places. Instead of being forbidden to use a controlled substance he "shall have no use of controlled substance," a puzzling expression. And he is required to pay substantial restitution (more than $13,000) "at a rate of at least 10% of new monthly income," but there is no explanation of what "new" is meant to signify. Nor did the district court specify a penalty should the defendant fail to pay the restitution ordered.

Ortiz's counsel takes particular issue with two standard conditions of supervised release that might be thought to impinge on constitutional rights: that "the defendant shall answer truthfully all inquiries by the probation officer" and that he "shall permit a probation officer to visit him or her [there is of course no "her" in the case] at any time at home or elsewhere and shall permit confiscation of any contraband observed in plain view of the probation officer." The first of these conditions essentially asks for a waiver of the right not to be forced to incriminate oneself, because the

condition would require the defendant to answer "yes" if he were asked whether he had committed another crime and he had. The second condition would allow the probation officer to "visit" the defendant at 3:00 a.m. every morning and look around for contraband, and also allow him to follow the defendant everywhere, looking for contraband. Regardless of any possible constitutional concern, both conditions are too broad in the absence of any effort by the district court to explain why they are needed.

A number of decisions in other circuits brush aside objections to the breadth and ambiguity of the many conditions of supervised release imposed by district judges. See, e.g., *United States v. Phillips*, 704 F.3d 754, 767–68 (9th Cir. 2012); *United States v. Zobel*, 696 F.3d 558, 574–75 (6th Cir. 2012); *United States v. Albertson*, 645 F.3d 191, 200–01 (3d Cir. 2011); *United States v. Mike*, 632 F.3d 686, 696–97 (10th Cir. 2011). However, in all those cases, and others that we might cite as well, the court interpreted an overbroad or ambiguous condition narrowly. For example, in *Phillips* after noting that the district court had imposed "a condition prohibiting Phillips from 'frequent[ing] places where controlled substances are illegally sold, used, distributed, or administered,'" a condition that Phillips contended on appeal was "'vague and overbroad,'" the Ninth Circuit  held that the condition "prohibits Phillips from *knowingly* going to a specific place where drugs are illegally used or sold, but … does not prohibit him from … going to a given neighborhood simply because a person is selling drugs somewhere within that neighborhood." 704 F.3d at 767–68 (emphasis in original). It is preferable for the district court to specify limitations in a condition of supervised release in the condition itself, rather than leaving it to the appellate court to interpolate the limitations;

otherwise the defendant may think himself bound by the broader interpretation. If you're 90 percent certain that purchasing girl-scout cookies from someone who rings your doorbell wouldn't violate a condition of supervised release, do you want to risk going back to prison because you may have guessed wrong? If out of caution therefore you decline to purchase the cookies, the sentencing guideline will deter lawful conduct, and thus be overbroad. Like any other part of a criminal sentence, the conditions of supervised release that are imposed should be clear.

That is one teaching of our *Siegel* decision and in addition we believe and endeavored to make clear in that decision that conditions of supervised release imposed in a sentence require careful appellate consideration when the sentencing judge fails to explain or justify or narrow ambiguous or inappropriate-seeming conditions and fails to apply the statutory sentencing factors.

Our third case is *United States v. Bates*. The defendant was sentenced to 188 months in prison for dealing in crack cocaine. With regard to supervised release, the case is essentially identical to *Ortiz*. No conditions of supervised release were mentioned in the presentence report. The judge sprang them on the parties in the sentencing hearing, imposing the usual 13 standard conditions and five others (though for eight years, rather than the three years in Ortiz's case). He gave no reasons for any of them. All he said was: "The standard conditions are adopted by the Court" (actually, as we just noted, not all of them). Our criticisms of the handling of supervised release by the judge in Ortiz's case are equally applicable to Bates's case.

In our final case, *United States v. Blount*, the defendant
challenges not only the conditions of supervised release but
also the prison sentence (300 months, for running an exten-
sive organization engaged in the sale of heroin), specifically
the four-level enhancement in the defendant's base offense
level by reason of his being "an organizer or leader of a
criminal activity that involved five or more participants or
was otherwise extensive." U.S.S.G. § 3B1.1(a). For the per-
suasive reasons given by the district judge and unnecessary
for us to repeat or amplify, the enhancement, and so the 300-
month sentence, were proper. As in our other three cases,
however, the district judge's handling of supervised release
was seriously flawed.

There was again no discussion of any section 3553(a) fac-
tors that the judge may have thought justified the length and
conditions of supervised release. His discussion of the condi-
tions of supervised release that he was imposing on the de-
fendant is difficult even to understand. He listed only 8 con-
ditions, but said that the defendant "shall comply with the
standard conditions that have been adopted by this court,"
and the written judgment lists the 13 usual standard condi-
tions—with all their ambiguities uncorrected. The 8 condi-
tions he discussed are a mixture of mandatory and "addi-
tional" conditions.

Two of them are seriously questionable. One is that "if
[the defendant is] unemployed after the first 60 days of su-
pervision or if unemployed for 60 days after termination or
layoff from employment, he shall perform at least 20 hours
of community service work per week at the direction of and
in the discretion of the Probation Office until gainfully em-
ployed." Taken literally, this means that if at, say, age 68 he

is unemployed, he will have to perform 20 hours of community service per week—indefinitely (till he dies?). No doubt the judge, if he thought about this condition, would not have wanted it interpreted literally, especially since an application note to U.S.S.G. § 5F1.3 states that "community service generally should not be imposed in excess of 400 hours." The judge did not mention that application note, and the government is incorrect when it says in its brief that the judge's community-service condition "did not amount to the imposition of more than 400 hours of service." The judge placed no limit on the amount of community service that the defendant could be ordered to do.

Another unsound condition was that the defendant "obtain his GED within the first year of supervision." (The government's brief mistakenly states that the judge merely ordered the defendant to "seek" his GED.) The GED is a battery of five tests; if you pass, you get a certificate roughly equivalent to a high-school diploma (though try convincing a prospective employer of the equivalence). There is no assurance of passing the tests, let alone within a year. There is no means of "requiring" that a person pass the GED tests, unless cheating is permitted. This is an example of an improper condition of supervised release that could be fixed by changing a single word, and would have been years ago if the Sentencing Commission, the probation services, and the judiciary paid closer attention to the precise scope and wording of conditions of supervised release. We are mindful that both the employment and GED conditions were upheld in *United States v. McKissic*, *supra*, 428 F.3d at 724–25, but against objections different from those that we have just expressed.

An added wrinkle is that the defendant was 39 years old when sentenced; his prison sentence is (300 months ÷ 12 =) 25 years, though good-time credit could reduce the sentence to just under 22 years; he will therefore be between 61 and 64 when he is released. The judge imposed a 10-year term of supervised release for some though not all of the counts. For others it was 3 years, although this would have consequences only if the 10-year counts were vacated, which we are not doing.

The judge should have explained the need for a 10-year term of supervised release to take effect when this defendant is in his 60s. How likely is the defendant to reenter the heroin trade, or engage in other criminal activity, at that age? He has a long criminal record but all related it seems to dealing in heroin. He may be burned out by the time he's released from prison. To impose a 10-year term of supervised release to take effect in 22 to 25 years requires justification; and while the term can be modified at any time, a superior alternative might well be to impose at the outset a nominal term, with the understanding (contrary to the error by the district judge in Thompson's case) that it can be extended, if that seems needful, on the eve of the defendant's completion of his prison sentence.

The government in defending the conditions of supervised release imposed in these four cases relies not on case law but rather on the proposition that the defendant can ask the probation officer what a condition means, and the officer will give him a sensible answer. This is some protection against unreasonable or ambiguous conditions, but not enough. It is too much like telling a defendant he'll be on supervised release until the probation officer decides he's

been on it long enough, or that if he isn't sure what is "excessive use of alcohol" he should ask the probation officer. As a practical matter the terms of supervised release would be determined not by a judge but by a probation officer exercising an essentially unlimited discretion (for example to define "excessive use of alcohol"). The law doesn't authorize that. *United States v. Tejeda*, 476 F.3d 471, 473–74 (7th Cir. 2007). It's true that probation officers are employees of the federal judiciary, but so are law clerks and judges' secretaries, yet they are not allowed to decide the sentences of convicted defendants.

To conclude, in all four cases the judgments are reversed and the cases remanded for resentencing. Although we find no reversible error in the prison sentences treated in isolation from the conditions of supervised release, we vacate the entire sentences because reconsideration of those conditions may conceivably induce one or more of the judges to alter the prison sentence that he imposed.

REVERSED AND REMANDED.