In the

# United States Court of Appeals

## For the Seventh Circuit

No. 14-2701

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

GLORIA HARPER,

*Defendant-Appellant.*

Appeal from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 11 CR 479-1 —**Sharon Johnson Coleman**, *Judge.*

ARGUED OCTOBER 6, 2015— DECIDED NOVEMBER 6, 2015

Before WOOD, *Chief Judge*, and POSNER and WILLIAMS,
*Circuit Judges*.

POSNER, *Circuit Judge*. The defendant pleaded guilty to
fraud consisting of her having abused her position as a
member of a Chicago public-school board by accepting kick-
backs of more than $500,000 from bus companies to which
she steered transportation contracts worth $21 million. The
parties stipulated that the value of the benefit received from
the fraud was between $7 and $20 million, and so the guide-

lines range would have been 360 months to life. The guidelines range would have been 360 months to life. The guidelines in effect at the time required a 20-level enhancement for honest services fraud when "the value of the payment, the benefit received or to be received in return for the payment, the value of anything obtained or to be obtained by a public official or others acting with a public official, or the loss to the government from the offense, whichever is greatest," was between $7 and $20 million. U.S.S.G. §§ 2C1.1(b)(2), 2B1.1(b) (2012). "The value of 'the benefit received or to be received' means the net value of such benefit." U.S.S.G. § 2C1.1, comment 3. But the statutory maximums for the two counts were 20 years and 3 years respectively, and that changed the range to 276 months (23 x 12) pursuant to U.S.S.G. § 5G1.1(a). The judge imposed a below-guidelines sentence of 120 months, ordered the defendant to pay restitution to the school district in the amount of $7.2 million, and imposed a year of supervised release, which the judge may have thought mandatory.

The appeal challenges the length of the sentence and the conditions of supervised release. At sentencing the government argued that the value of the benefit received by the fraudsters in exchange for the kickbacks was nearly $9.7 million. An accountant testifying as an expert witness for the defendant estimated the value of the benefit as only $7.6 million, and therefore near the lower end of the benefit estimate. But the judge rejected his testimony because it lacked "specifics": "the government has laid out its case for how it comes to the figure. The defense just says, well, we don't think that's the figure. We think that estimate is too broad, but there's no specifics that the defendant is really able to give the Court. And the Court's going to rely on the government's figures on the loss amount here and the govern-

ment's figures about what was involved here based on the presentations that were made. Who knows. It may be low. It may be low. We don't know what was going on here."

The defendant's expert witness had deducted, from the value of the benefit estimated by the government, salaries received by managers of the bus companies; he assumed that those salaries, though derived from payments to the companies by the school board, were not benefits received in exchange for a kickback but instead compensation for legitimate managerial services. But no evidence was presented that these executives rendered legitimate managerial services commensurate with the fees they received from the school board. The accountant also deducted from the benefit amount consulting fees paid to persons complicit in the fraud. That was an improper deduction.

So probably the judge's conclusion that the defendant's estimate of the benefit should be rejected was correct. But it was not true that the defense had failed to present "specifics" concerning the amount—the expert witness for the defense had been specific—and the judge's closing statement—"Who knows. It may be low. It may be low. We don't know what was going on here"—indicates indecision about the value of the benefit.

The defense argued that the guidelines sentence, which had provided the starting point for the judge's determination of the sentence to impose, overstated the seriousness of the defendant's offense because the value of the benefit of her crime had been near the low end of the $7-to-$20 million range. See U.S.S.G. § 2B1.1, comment 20(C); *United States v. Kappes*, 782 F.3d 828, 864 (7th Cir. 2015) (sentencing judge must address the defendant's principal arguments in mitiga-

tion). But the argument was premised on the defense expert witness's estimate that the value of the benefit had been only $7.6 million, and the judge didn't accept that, and her rejection of the figure suggested that she was accepting the government's much higher figure—$9.7 million—instead. But this is not certain, for the judge did concede that the value of the benefit might have been "low" and said "we don't know what was going on here." Yet she pointed to factors that made the offense "serious" regardless of the exact amount of the value of the benefit caused by the defendant: there had been vulnerable victims of the fraud (the impoverished school district and children of North Chicago), there was the defendant's history of fraud, there was the social problem of public corruption, and there were the defendant's attempts to make excuses for her criminal conduct. But even so, remember that the judge sentenced the defendant far below the guideline range.

Since the parties had stipulated that the value of the benefit from the fraud was between $7 and $20 million, it may seem odd that the parties spent so much time at the sentencing hearing arguing over what the actual amount was. But as the defendant's brief explains, "While Ms. Harper did not persist in her argument that the guideline enhancement for the value of the benefit received was wrong, she made her arguments regarding the value of the benefit received as a mitigating factor for the district court to consider when imposing a sentence using the § 3553(a) factors. Ms. Harper's argument was that the 20-level enhancement significantly overstated the seriousness of the offense and the district court should consider that overstatement when imposing sentence." The judge did consider as we noted the possibility that the value of the benefit received may have been lower

than the $9.7 million proposed by the government, but as we also explained she enumerated proper reasons for concluding that the defendant's fraud was nevertheless a serious crime.

Her sentencing statement does, however, contain an incomplete discussion of a separate issue concerning the prison sentence that she imposed on the defendant. She said that "this Court [meaning the judge] is going to find that the sentence that the Court exerts [she meant 'imposes'] today is consecutive to the sentence from the Louisiana Court, not concurrent." The defendant had been sentenced by a court in Louisiana for a crime unrelated to the crime in the present case though apparently of a similar character. The judge in this case did not explain why she thought the sentence she was imposing should run consecutively to rather than concurrently with the Louisiana sentence. Some reason needed to be given. The transcript of the sentencing hearing contains discussion of the issue by the lawyers, but the discussion is inconclusive.

We don't mean to prejudge the issue. In giving the defendant a sentence far below the guideline range the judge may for all we know have been motivated by the Louisiana sentence and thus have intended that the defendant serve the remainder of that sentence with no offset to her federal sentence as an alternative to a longer federal sentence. But a judge who must choose between imposing a sentence consecutively to or concurrently with another sentence should state the reason for her choice, as for the other choices made in sentencing.

The other grounds for ordering resentencing relate to the conditions of supervised release. The sentence was imposed

in July of last year, and since then several decisions of this court have clarified the analysis required to decide what conditions to impose in what circumstances. See, e.g., *United States v. Thompson*, 777 F.3d 368, 373 (2015). Supervised release was discussed in the following section of the judge's sentencing statement:

> Upon release from the Bureau of Prisons, you will have the one year of mandatory supervised release. And you will be expected, Mrs. Harper, to comply with all the conditions of the Court upon that release, which will include no unlawful use of illegal substances and the cooperation with Probation of any random drug testing. No firearm, destructive device possession. Cooperating with DNA samples. Complying with all of the rules and regulations of the law under the state and federal law. You will also not incur any new credit charges or open lines of credit without the approval of Probation. And you will provide the Probation Office with any—access to any requested financial information.

> You will also do in addition 40 hours of community service in North Chicago community to be arranged by Probation during that year. And the Court is also going to ask both within and if it's still needed outside, you get some type of mental health counseling or at least have an assessment as to whether that counseling is needed.

This—the judge's entire discussion at the sentencing hearing of the conditions of supervised release that she was imposing—contains a number of problematic statements: that the imposition of supervised release was mandatory (it was not, although perhaps she simply meant that some of the conditions were required by statute); that the conditions of supervised release would "include" the listed conditions,

suggesting that other conditions would be imposed as well (as they were—but improperly as we'll see); the ambiguity of the phrase "all of the rules and regulations of the law under the state and federal law" (no one knows all the rules and regulations promulgated by the states and the federal government); the ambiguity of "both within and … outside"; and the failure to identify each condition by number in order to help the defendant locate its full text.

Supervised release is mandatory for certain crimes, see, e.g., 18 U.S.C. § 3583(k); 21 U.S.C. § 841(b), but not for the ones the defendant in this case was convicted of. And when as in this case some of the conditions are discretionary the sentencing judge must give a reason for the imposition of each such condition that he or she imposes. See 18 U.S.C. §§ 3583(c), (d)(1)–(3); *United States v. Thompson, supra,* 777 F.3d at 373. The judge didn't do that. Moreover, the written judgment imposes 13 conditions of supervised release that she didn't mention at the sentencing hearing. That was a mistake; the entire sentence is the sentence stated orally by the judge at the sentencing hearing. Fed. R. Crim. P. 35(c); *United States v. Kappes, supra,* 782 F.3d at 862; *United States v. Alburay,* 415 F.3d 782, 788 (7th Cir. 2005). Several of the written conditions in the judgment, moreover, have been criticized in recent decisions of ours. *United States v. Sandidge,* 784 F.3d 1055, 1068–69 (7th Cir. 2015); *United States v. Thompson, supra,* 777 F.3d at 376–80.

Finally, prison and supervised release can "be substitutes as well as complements," *United States v. Downs,* 784 F.3d 1180, 1182 (7th Cir. 2015), since, realistically, supervised release is a form of custody (like parole, which it largely replaced in the federal system of criminal justice) because it

can and often does impose severe limitations on a defend-
ant's post-release liberty. We are therefore ordering a full
resentencing of the defendant. After correcting the condi-
tions of supervised release to conform to the analysis in this
opinion, the judge may decide that the prison sentence she
imposed was too long or too short and if so she will have to
revise it. We also remind the judge that the entire sentence
must be delivered orally.

REVERSED AND REMANDED