In the

# United States Court of Appeals
## For the Seventh Circuit

———————————

Nos. 15-1520 & 15-1561

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

JERMAINE R. SPEED AND RICO J. SPEED,

*Defendants-Appellants.*

———————————

Appeals from the United States District Court for the
Central District of Illinois.
Nos. 14-cr-20056 & 14-cr-20057 — **Colin S. Bruce**, *Judge.*

———————————

ARGUED NOVEMBER 5, 2015 — DECIDED JANUARY 19, 2016

———————————

Before FLAUM, MANION, and ROVNER, *Circuit Judges.*

MANION, *Circuit Judge.* Rico and Jermaine Speed are cousins who were caught dealing crack in the city of Kankakee, Illinois. Rico also sold firearms and ammunition in violation of the law. After the cousins each serve 18 years in federal prison, they must each complete eight years of supervised release. These consolidated appeals focus on three identical challenges to Rico's and Jermaine's conditions of supervised release: the district judge's decisions to limit contact with

felons, impose alcohol-related restrictions, and prohibit them from using dangerous weapons. We affirm, while clarifying the standards of review that apply when defendants challenge conditions of supervised release.

## I. Background

When Rico and Jermaine Speed sold cocaine base, also known as crack cocaine, their drug deals were secretly reported to law enforcement. Rico Speed sold 30 grams of crack to a confidential informant once, and sold firearms and ammunition to the same informant four times, between 2011 and 2013. After he was indicted on four counts, he pleaded guilty to one count of possessing a firearm as a felon and one count of knowingly distributing crack. Jermaine Speed was indicted on four counts for selling cocaine four times in 2010 and 2011: he sold 8.9 grams, 10.2 grams, 27.2 grams, and 29.6 grams of cocaine to a confidential informant. He pleaded guilty to the last count only, for his largest cocaine sale.

In separate sentencing hearings, District Judge Colin Bruce varied downward and imposed 216 months in prison, or 18 years, on each defendant. Judge Bruce also sentenced each to the mandatory eight years of supervised release.

When Judge Bruce began these sentencing hearings, Rico's attorney and Jermaine's attorney each offered objections to the presentence investigation reports (PSRs) provided by probation, but neither attorney objected to the PSRs' recommended conditions of release. As probation read its recommendations for supervised-release conditions, Judge Bruce adopted the conditions and reasoning found in each PSR.

First, for both Rico and Jermaine, the district court required that "[t]he defendant shall not knowingly meet,

communicate, or otherwise interact with any person whom he knows to be a convicted felon or to be engaged in, or planning to engage in, criminal activity, unless granted permission to do so by the probation officer." The district court reasoned that this would give each defendant his best chance of succeeding in supervised release, by keeping him away from people who would entice him to commit crimes.

Second, Judge Bruce directed each defendant that "[y]ou shall, at the direction of the U.S. Probation Office, participate in a program for alcohol treatment, including testing, to determine if you have used alcohol. You shall abide by the rules of the treatment provider." Judge Bruce reasoned that it is not unusual for drug-dependent individuals to drink more alcohol when drugs become unavailable. As he noted, alcohol-treatment programs would also require Rico and Jermaine to abstain from alcohol. Later, in his written judgments, Judge Bruce added this language to the conditions of release: "You shall refrain from any use of alcohol."

Third, although the PSR contained no recommendation on this issue, the district judge added a condition during the oral sentencings. He ordered that Rico and Jermaine "shall not possess a firearm, ammunition, destructive device, or any other dangerous weapon." Judge Bruce did not provide reasons for imposing this condition on either defendant.

Rico and Jermaine Speed now bring these direct appeals.

## II. Discussion

### A. Waiver

We begin with the government's argument that the Speeds waived their rights to appeal their conditions of release because they never objected below.

Waiver requires a defendant to intentionally surrender a known right. *United States v. Hinds*, 770 F.3d 658, 665 (7th Cir. 2014). On this issue of appealing supervised-release conditions, we recently explained that there is no waiver if a defendant "merely answered '[n]o'" when a district court generally invited legal objections to a sentence. *Id.* To waive a right in response to a general question, at the end of sentencing the defendant must (1) expressly approve the condition, or (2) have a strategic reason to avoid raising an argument in the sentencing hearing. *Id.*

Here, neither defendant expressly approved the challenged conditions of release, so that path to waiver is closed.

The government urges that, because Rico told the court he was taking this criminal conviction as his opportunity to "grow[] up to be like a man," it would have been strategically unwise for him to also object to conditions on his interactions with felons, alcohol consumption, and possession of dangerous weapons. This could be true, but it is merely speculative. Though we draw no conclusions here, it could also be that Rico believed that, as a mature man, he could handle things like responsible drinking.[1] The government has not shown that Rico actually waived a right. And concerning Jermaine, the government suggests no strategic reason at all for him to withhold objections. This path to waiver is also closed.

---

[1] We also note the irony in the government's request that we allow Rico to be treated "like a man," while it argues that his drinking must be monitored for nearly a decade.

In arguing that the Speeds waived their right to appeal, the government relies in part upon our decision in *United States v. Garcia-Segura*, 717 F.3d 566 (7th Cir. 2013). Under *Garcia-Segura*, as later described in *Donelli*, a defendant waives his right to appeal mitigation arguments if a trial judge asks whether the defendant needs "any further elaboration" of the reasons for a sentence and the defendant says no. *United States v. Donelli*, 747 F.3d 936, 941 (7th Cir. 2014). The government urges that, when the district court in this case asked whether there was "anything unclear or confusing," the Speeds waived their rights to appeal because their attorneys answered "no" or "I can't think of anything else." These facts might appear to satisfy *Garcia-Segura*, as described in *Donelli*, but we never intended to imply that a general "anything else?" results in the waiver of a specific right. Instead, *Garcia-Segura*'s protection of affirmative, specific waiver holds true:

> we encourage sentencing courts to inquire of defense counsel *whether they are satisfied that the court has addressed their main arguments in mitigation*. If the response is in the affirmative, a later challenge for failure to address a principal mitigation argument under the reasoning of *Cunningham* would be considered waived. If not, the trial court would have the opportunity to clarify whether it determined that the argument was "so weak as not to merit discussion," lacked a factual basis, or has rejected the argument and provide a reason why.

*Garcia-Segura*, 717 F.3d at 569 (emphasis added). Here, when the defendants merely answered a generalized question about whether they were confused, *Garcia-Segura* was not

met. Rico and Jermaine did not affirmatively waive specific rights.

For these reasons, we conclude that neither defendant waived his right to appeal the conditions of supervised release.

**B. Supervised Release: The Standards of Review**

Turning to the substance of the Speeds' appeal, we first consider what standard of review controls. On procedural error, we conduct de novo review of whether a district court made sufficient findings to support conditions of release. *United States v. Moore*, 788 F.3d 693, 696 (7th Cir. 2015). The standard of review we apply to substantive error has been less clear.

The government argues that plain-error review applies. As the Speeds note, however, we have recognized "tension" in whether we review unobjected-to conditions for plain error or abuse of discretion. *See United States v. Kappes*, 782 F.3d 828, 844 (7th Cir. 2015) (quoting *United States v. Shannon*, 743 F.3d 496, 499 (7th Cir. 2014)) (internal marks omitted).

In *United States v. Hinds*, we called the standard of review "an open question" when defendants failed to object to supervised-release conditions below. *Hinds*, 770 F.3d at 665. *Hinds* deferred resolving this issue because the defendant prevailed under either standard. *Id.* Other Seventh Circuit cases have likewise declined to specify the standard where the outcome was the same either way. *See Kappes*, 782 F.3d at 844 (gathering citations). We have cautioned defendants, however, against failing to object to supervised-release conditions on the belief that we will continue treating the two standards as interchangeable. *Id.*

In general, our rule has been to review for abuse of discretion when defendants contest conditions of release in the district court, while examining uncontested conditions for plain error. *Id.* (citing *United States v. Baker*, 755 F.3d 515, 522 (7th Cir. 2014); *United States v. Ross*, 475 F.3d 871, 873 (7th Cir. 2007)). When we are reviewing uncontested conditions, plain-error review is generally fitting: it is consistent with the standard of review in other criminal appeals. When a defendant fails to object to evidence at trial, for example, we review for plain error. *United States v. Rangel*, 350 F.3d 648, 650 (7th Cir. 2003). Likewise, if a defendant does not object to a prosecutor's statements in district court, we review for plain error. *United States v. Sandoval*, 347 F.3d 627, 631 (7th Cir. 2003). We thus hold that we apply plain-error review when a defendant fails to object to supervised-release conditions below, while reviewing for abuse of discretion when the defendant does object in district court. *See United States v. Poulin*, No. 14-2458, 2016 WL 51387, at *4 (7th Cir. Jan. 5, 2015).

As we have previously recognized, however, this standard may need to be adjusted if the sentencing hearing is the first time that a defendant is faced with a condition of supervised release. *See Kappes*, 782 F.3d at 843–44. If a condition appears in a statute or the Sentencing Guidelines, the defendant is charged with being on notice of the condition. *Id.* at 842. Sentencing judges are encouraged to provide advance notice of potential supervised-release conditions. *Id.* Specific advance notice is only required, however, if a condition does not appear in a federal statute or the Sentencing Guidelines. *Id.* Thus, if a condition (1) is imposed on the defendant at sentencing and (2) does not appear in a statute or the Guide-

lines, we will review for abuse of discretion even if the surprised defendant failed to object at sentencing.

With these holdings on standards of review, we now examine the Speeds' three objections to conditions of release.

## C. Supervised Release: The Conditions

When a sentencing judge imposes conditions of supervised release, they must reasonably relate to four factors. These are "[1] the defendant's offense, history, and characteristics; [2] the need for deterrence; [3] the need to protect the public from the defendant; and [4] the need to provide the defendant with treatment." *United States v. Musso*, 643 F.3d 566, 571 (7th Cir. 2011) (citing 18 U.S.C. § 3583(d)). Any condition must reasonably relate to the first factor. 18 U.S.C. § 583(d)(1). It also cannot deprive more liberty than reasonably necessary to achieve the latter three factors. 18 U.S.C. § 3583(d)(2).

### 1. Contact with felons

Rico and Jermaine object first to the restriction on contact with felons during supervised release. This case picks up the thread where *United States v. Thompson*, 777 F.3d 368 (7th Cir. 2015), left off. In *Thompson*, the court found a condition of release vague when it barred a defendant from "associat[ing] with any person convicted of a felony, unless granted permission" by the probation officer. *Id.* at 377.

Our decision in *Thompson* suggested instead telling a defendant that he may not "meet, communicate, or otherwise interact with a person whom he knows to be engaged, or planning to be engaged, in criminal activity." *Id.* And in the Speeds' cases, the following condition was imposed on both defendants: "The defendant shall not knowingly meet,

communicate, or otherwise interact with any person whom he knows to be a convicted felon or to be engaged in, or planning to engage in, criminal activity, unless granted permission to do so by the probation officer." This language makes the meaning of "association" clear. Further, it requires scienter and goes beyond *Thompson* by creating a safety valve for probation-approved interactions with felons and criminals.

Rico and Jermaine do not object to the ban on interacting with people who are actually committing crimes, but they appeal the prohibition on interacting with people convicted of felonies. This is not an abstract argument. The cousins, who will enter supervised release as felons themselves, urge that this condition will restrict their constitutional freedom of association with people in their family and community. For that matter, the condition prevents them from interacting with each other during their terms of supervised release, unless their probation officers grant permission.

The Speeds do not cite any cases on how this condition violates the Constitution, however, and we do not find any grounding for their argument. On the contrary, prohibiting contact with felons is not an unusual federal condition of supervised release, particularly where probation officers can approve the requested contact. *See, e.g.*, *id.*; *United States v. Walker*, 742 F.3d 614, 615 (5th Cir. 2014); *United States v. Peebles*, 624 F.3d 344, 346 (6th Cir. 2010); *United States v. Napulou*, 593 F.3d 1041, 1044 (9th Cir. 2010); *United States v. Charles*, 531 F.3d 637, 639 (8th Cir. 2008); *United States v. Smith*, 436 F.3d 307, 309 (1st Cir. 2006). If Rico or Jermaine needs to interact with a family member, friend, colleague, or any other individual with a felony conviction, he can speak with his

probation officer, who knows the individual circumstances and can approve appropriate requests.

Because this condition does not appear in a statute or the Guidelines, we review for abuse of discretion. The district judge did not abuse his discretion when imposing this condition.

### 2. *Alcohol consumption, testing, and treatment*

The Speeds next challenge the alcohol-related conditions of their supervised release.

They argue first that the written judgment's ban on all alcohol consumption is inconsistent with the oral sentence, and that the oral sentence governs. It is well established that an oral sentence controls if it conflicts with the written judgment. *United States v. Johnson*, 765 F.3d 702, 710–11 (7th Cir. 2014). At the Speeds' sentencings, the probation officer stated that "any treatment program [the defendant] is in will require him to abstain from alcohol," and the district court expressly adopted that statement. There is no conflict between this statement, or other statements the court made during the hearing, and the written judgment's full ban on drinking alcohol. Thus, the conflict rule is not triggered and the written judgment stands.

The Speeds also contend that, because the district court did not actually restrict their alcohol consumption, there is no purpose in requiring them to undergo alcohol testing and treatment. To begin with, the district court's ban on all alcohol consumption is effective. Even were it not, the testing and treatment requirements would be appropriate conditions. Rico has a prior conviction for driving under the influence, and he underwent alcohol treatment after that convic-

tion. Though he claimed to have stopped drinking, he admitted daily marijuana use. It was permissible for the district court to conclude that Rico might return to alcohol if he could not use drugs during supervised release. In addition, Jermaine admits in his briefing to "usually" drinking alcohol "two or three times a week when he is upset or depressed." This is also sufficient support for the district court's decision.

These conditions also do not appear in a statute or the Guidelines and, once again, we conclude that the district court did not abuse its discretion.

### 3. *Dangerous weapons*

Finally, the defendants challenge the ban on possessing "a firearm, ammunition, destructive device, or other dangerous weapon."

First, the Speeds argue that they received no notice of this condition. But this is an enumerated special condition of release. Under Sentencing Guideline § 5D1.3(d)(1), if a defendant is being sentenced for a felony, the recommendation is to impose "a condition prohibiting the defendant from possessing a firearm or other dangerous weapon." The Speeds are deemed to have notice of this condition because it was enumerated in the Guidelines. *See Kappes*, 782 F.3d at 842. Their notice argument therefore fails.

Second, the Speeds object because the district judge did not explain this condition of release at the sentencing hearing. We review the condition in light of the judge's comments during the full sentencing hearing. *Id.* at 859. Rico was pleading guilty to being a felon in possession of a firearm, while Jermaine was seen in illegal possession of a pistol. On facts like these, it was reasonable for the district judge to re-

strict their access to firearms. And the defendants both concede that, as convicted felons, they cannot possess firearms. This condition therefore relates at least to the defendants' histories and the need to protect the public going forward.

Third, the defendants argue that "dangerous weapon" is a vague term. We recently addressed this issue in *United States v. Armour*, 804 F.3d 859, 869 (7th Cir. 2015), where we concluded that a condition prohibiting dangerous weapons provides sufficient notice of the prohibited conduct to a person of reasonable intelligence. *Armour* recognized that, "although [i]t would be better if the [condition] stated that 'dangerous weapon' includes objects used, though not designed to be used, as weapons … it is not a fatal infirmity." *Id.* (internal marks omitted). The condition is not vague.

The defendants correctly observe that courts put a wide range of objects in the dangerous-weapons category: a car, a metal hoe, shoes, and more. *See United States v. Schoenborn*, 4 F.3d 1424, 1432 (7th Cir. 1993). In short, a dangerous weapon can mean "virtually any object given appropriate circumstances." *Id.* But how the defendant uses it matters: the definition of a dangerous weapon "turns not on the object's latent capability alone, but also on the manner in which the object was used." *Id.* While the Speeds urge that there is no scienter requirement, the person holding the shoe (or any other potential dangerous weapon) is the one with the power to keep it a mere shoe or transform it into a dangerous weapon.

The Speeds had notice of this condition because it appears as a special condition in the Guidelines. On plain-error review, we conclude that the district court did not err.

### III. Conclusion

The supervised-release conditions are thus AFFIRMED.