```
┌─────────────────────────────────────────────────┐
│             NONPRECEDENTIAL DISPOSITION           │
│  To be cited only in accordance with Fed. R. App. P. 32.1 │
└─────────────────────────────────────────────────┘
```

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Argued November 15, 2016
Decided December 19, 2016

**Before**

DIANE P. WOOD, *Chief Judge*

WILLIAM J. BAUER, *Circuit Judge*

DIANE S. SYKES, *Circuit Judge*

No. 15-3094

| | |
|---|---|
| UNITED STATES OF AMERICA, | Appeal from the United States |
| *Plaintiff-Appellee*, | District Court for the Northern District of Illinois, Eastern Division. |
| v. | |
| | No. 13-CR-292 |
| JACQUELINE BREWER, | |
| *Defendant-Appellant*. | Edmond E. Chang, *Judge*. |

**O R D E R**

This appeal marks the second time that Jacqueline Brewer has appeared before us challenging her sentence for aggravated identity theft, 18 U.S.C. § 1028A(a)(1), and fraudulent use of a social security number, 42 U.S.C. § 408(a)(7)(B). During the first appeal, Brewer and the government filed a joint motion for remand in which Brewer represented that she intended "to challenge only the district court's imposition of certain conditions of supervised release." The government conceded that resentencing was warranted in light of *United States v. Thompson*, 777 F.3d 368 (7th Cir. 2015), and on that basis we summarily vacated Brewer's sentence and remanded for resentencing. Brewer now argues that on remand the district court erred by applying a 2-level

upward adjustment for obstruction of justice, an increase that also was given to her at her initial sentencing. *See* U.S.S.G. § 3C1.1. We affirm the judgment.

From August 2011 through July 2012, Brewer took out $20,000 in payday loans from 16 different lenders. Brewer has been married several times, and on the loan applications, she used six different names, all variants of her given name and the surname of a former spouse: Jacuquelyn Walker, Jacquelyn Walker, Jacquelyn Johnson, Jacquelyn Walker-Johnson, and Jacqueline Livingston-Walker. On the earliest applications, she used one of three social security numbers assigned by the Social Security Administration—her original number plus two replacements she obtained by claiming to have been the victim of identity theft. But after her employer ComEd promoted Brewer to the position of customer-service supervisor, she also took out payday loans using social security numbers she had stolen from a database of customer information.

ComEd investigators uncovered Brewer's scheme when customers complained about receiving calls from creditors about the loans. The investigators then discovered that in her application for employment, Brewer had falsely denied having a felony conviction. In fact, she was on supervised release for mail fraud, fraudulent use of social security numbers, and unauthorized use of credit cards. *See United States v. Brewer*, No. IP-06-CR-0146-01 (S.D. Ind. Aug. 1, 2007). Brewer had falsely told her probation officer that ComEd knew about her criminal history and that she did not have access to customers' information.

Brewer pleaded guilty to the indictment in this case in October 2013. In a memorandum filed before Brewer's initial sentencing, her lawyer asserted that Brewer had been "confused" about which of the three numbers to use when applying for a loan with her own social security number, and thus none of these loans should count as relevant conduct. To substantiate this theory, counsel submitted three unauthenticated documents that the lawyer represented to be from the Social Security Administration. The document dated January 2010 states that "Mrs. Jacquelyn Walker has experienced fraud on her Social Security number, and at this time we are unable to give her any proof of the Social Security Number she is allowed to use." Yet this document says that Brewer's current number ends with 1098 (the other five digits are blacked out). On the other hand, the document dated April 2011 instructs "Ms. Jacquelyn Walker aka Jacquelyn Livingston" to "only use" a number ending in 9105 pending the outcome of the agency's investigation into her allegation of identity theft. And the document dated July 2012 appears to reverse course, declaring that "Jacqueline Walker" had been

"assigned" a number ending in 1098 (again the remaining five digits are blacked out). All three of these documents are identified in the lower left corner as a "Form SSA-2458," but unlike the first two, the third one lacks the further designation of "EF (07-2002)."

At the initial sentencing, the government maintained that Brewer had fabricated at least the last of these three documents. Michael Pettus, whose surname appears on the document as the "service rep" who prepared it, acknowledged that he may have met with Brewer in July 2012. But he flatly denied preparing the document, stating that he *never* would have used that form to tell a customer to use a particular social security number. He also pointed to irregularities showing that the document could not have been created with the .pdf template his office uses (and used in 2012). For example, some of the numbers and check marks on the form do not line up correctly with the boxes provided for them, some of the text is underlined (not an option the template provides), the document lists the addresses of two different Social Security Administration offices, and the listed telephone number is incorrect. To highlight these discrepancies, the government introduced an example of how the document would look if Pettus had used the .pdf template to create it. The government also introduced testimony from two managers from the Social Security Administration who corroborated Pettus's testimony that the July 2012 document appears to be fabricated. They concluded that it must have been based on an outdated version of form SSA-2458 because it identifies the Social Security Administration as a part of the Department of Health and Human Services even though the agency has been independent for two decades. Brewer did not testify at sentencing to explain how she received the document, nor did she offer any other evidence.

After receiving the government's undisputed evidence, the district court found at that initial sentencing hearing that the government had proved by a preponderance of the evidence that the July 2012 document is "not genuine" and that Brewer had submitted it intentionally to explain why she had applied for several loans in a short time using all three of her social security numbers. Thus, in calculating Brewer's offense level under the sentencing guidelines, the court declined to give Brewer any downward adjustment for acceptance of responsibility, *see* U.S.S.G. § 3E1.1, and instead imposed an upward adjustment for obstruction of justice, *see* § 3C1.1. The court then sentenced Brewer to an aggregate of 65 months' imprisonment: 41 months for fraudulent use of a social security number plus the statutory minimum consecutive term of 24 months for aggravated identity theft.

The parties' joint motion for remand after that initial sentencing stated that Brewer wanted to challenge on appeal "only the district court's imposition of certain conditions of supervised release." A remand was appropriate, the parties said, because "the record does not establish that the district court followed the requirements of 3583(d), including by determining that the discretionary conditions of supervised release imposed were reasonably related to the factors set forth in 3553(a)(1), (a)(2)(B), (a)(2)(C), and (a)(2)(D)." We granted the motion and remanded for resentencing "in light of *United States v. Thompson*."

On remand Brewer argued for a lower sentence based on her view of certain postsentencing events: (1) The Bureau of Prisons had miscalculated her release date; (2) the BOP had failed to provide mental-health treatment; and (3) she had made an effort to rehabilitate herself while in custody. Brewer also devoted 12 lines of an 11-page resentencing memorandum to asserting that the document found by the district court to be fabricated in fact is legitimate. Counsel attached to the memorandum an unauthenticated "Visitor Information Report" that he said impeaches Pettus's testimony at the initial sentencing that Pettus was "unaware of whether his office had an electronic version of [form] SSA 2458 in 2012."

At Brewer's resentencing the parties declined to present any new evidence or argument to support the positions they had advanced during the initial sentencing. Indeed, Brewer's lawyer did not even mention the increase for obstruction of justice or attempt to explain the exhibit attached to Brewer's resentencing memorandum. The district judge thus adopted all of his prior guidelines calculations, including his decision to impose the increase for obstruction of justice. The judge then refined the conditions of supervised release to comply with *Thompson* and shaved five months off Brewer's sentence as a reward for her postsentencing rehabilitation efforts.

In this second appeal, Brewer challenges only the finding that she obstructed justice by submitting a false document during the sentencing proceedings. The government counters that Brewer waived this claim "by disavowing it on her first appeal." But as we explained recently in *United States v. Mobley*, "a *Thompson* remand gives a district court the power to hear new evidence or arguments (or reconsider the same evidence and arguments) as it fashions the new sentence." 833 F.3d 797, 802 (7th Cir. 2016). And though after a *Thompson* remand a district court is not *required* to consider evidence or arguments that could have been presented during an earlier appeal, the district court "is required to acknowledge that it has this power and explain why or why not it wishes to exercise it." *Id.* at 801; *see United States v. Lewis*, No. 16-1401,

2016 WL 6777327, at *4 (7th Cir. Nov. 16, 2016) ("A remand in light of *Thompson* vacates the entire sentence, allowing the district court to alter any aspect of that sentence at resentencing.").

That said, Brewer has not shown that the district judge erred in overruling her objection to the increase for obstruction of justice. The judge reduced her sentence by five months as a reward for her postsentencing efforts to reform, so he clearly was not "under the misapprehension that the remand was limited to the conditions of supervised release." *Mobley*, 833 F.3d at 803. The judge also acknowledged Brewer's resentencing memorandum in which she had again denied fabricating the July 2012 form. But Brewer on remand raised no *meaningful* challenge to the obstruction-of-justice guideline, so the judge properly exercised his discretion in choosing not to revisit an issue that Brewer abandoned during her first appeal. *See id.* at 801–02.

Moreover, we review for clear error the facts underlying the district court's application of § 3C1.1, *United States v. Stenson*, 741 F.3d 827, 831 (7th Cir. 2014), and Brewer has not shown that the judge clearly erred in finding that the July 2012 document is fabricated. During the original sentencing hearing, the government presented testimony from three agency employees, including Pettus who allegedly created the document, and each explained why the document cannot be genuine. Brewer, on the other hand, made no effort to authenticate the document and did not present any evidence in rebuttal. Counsel's speculation about the document's authenticity is not evidence. *See United States v. Chapman*, 694 F.3d 908, 914 (7th Cir. 2012). And the district court was not obliged to assume—despite all evidence to the contrary—that there is some innocent explanation for the form's many irregularities.

AFFIRMED.